Jason B. NICHOLAS, Plaintiff–
Appellant,

v.

Thomas J. MILLER, Deputy Superin-
tendent for Programs/Inmate Organi-
zation Coordinator, Woodbourne
Correctional Facility; Robert Han-
slmaier, Acting Superintendent,
Woodbourne Correctional Facility;
Raymond Broaddus, Deputy Commis-
sioner, New York State Department
of Correctional Services, Defendants–
Appellees.

Docket No. 98–2768.

United States Court of Appeals,
Second Circuit.

Argued June 2, 1999.

Decided Aug. 13, 1999.

**192**

Jason B. Nicholas, Pro Se, Wallkill, N.Y., for Plaintiff–Appellant.

Dianne L. Rosky, New York, N.Y., Appearing at Oral Argument, for Plaintiff–Appellant.

Archibald F. Robertson, Jr., Assistant Attorney General (Eliot Spitzer, Attorney General of the State of New York, John W. McConnell, Deputy Solicitor General, Robert A. Forte, Assistant Attorney General, on the brief), New York, N.Y., for Defendants–Appellees.

Before: MESKILL and WALKER, Circuit Judges, and KORMAN,[*] District Judge.

## PER CURIAM.

Plaintiff-appellant *pro se* Jason B. Nicholas appeals from the July 10, 1998 judgment of the United States District Court for the Southern District of New York (Whitman Knapp, *Judge*). The district court denied Nicholas's motion for a preliminary injunction, granted defendants-appellees' motion for summary judgment, and dismissed Nicholas's complaint. Nicholas alleges that defendants-appellees, various New York prison officials, violated his First Amendment rights when they denied his request to form a Prisoners' Legal Defense Center. We vacate the judgment of the district court and remand for further proceedings.

## BACKGROUND

While in prison, Nicholas has earned a college degree and concentrated on the study of law. He has "practiced" his craft as a jailhouse lawyer. On May 25, 1995, while at the Woodbourne Correctional Facility, Nicholas requested that the prison authorities allow him to form a Prisoners' Legal Defense Center (the "Center"). Its stated goals were to disseminate information to the public and media on prison issues, to lobby the state and federal government in support of those issues, and to provide legal assistance to selected prisoners. Defendant Thomas J. Miller, the Inmate Organization Coordinator and Deputy Superintendent for Programs at Woodbourne, recommended that Nicholas's request be denied, and defendant Robert Hanslmaier, Woodbourne's acting Superintendent, denied the request. Nicholas pursued an administrative appeal, and defendant Raymond Broaddus, the Deputy Commissioner of the Department of Correctional Services, rejected his appeal by letter dated July 13, 1995.

Nicholas brought this action pursuant to 42 U.S.C. § 1983 in October of 1995, initially naming Miller, Hanslmaier, and the New York State Department of Correctional Services as defendants. Nicholas requested a preliminary injunction and permanent injunctive relief requiring the prison to allow him to form the Center, a declaratory judgment, and unspecified monetary damages. Nicholas alleged that his First Amendment rights of speech, assembly, petition, access to the courts, political expression, and association, as well as his equal protection and due process

[*] The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

rights, had all been violated by defendants' refusal to allow him to operate the Center.

On June 10, 1996, the district court (Griesa, *Chief Judge* ) dismissed Nicholas's complaint as frivolous pursuant to 28 U.S.C. § 1915(d). Nicholas appealed and a panel of this court vacated the dismissal of the action and remanded the case for further proceedings with respect to Miller and Hanslmaier. *See Nicholas v. Miller,* No. 96–2528 (2d Cir. Aug. 6, 1997) (unpublished order). We stated that Nicholas's First Amendment associational right had an arguable basis in law under *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), but affirmed the dismissal of the case as frivolous with regard to all other claims and parties.

On August 25, 1997, Nicholas filed an amended complaint that reiterated his First Amendment, due process and equal protection claims and added Broaddus as a defendant. The amended complaint also requested declaratory, injunctive, and monetary relief in the amount of $25,000 in compensatory damages against each defendant, and $25,000 in punitive damages against each defendant. Nicholas moved for a preliminary injunction in the district court. Defendants answered the complaint and asserted numerous defenses, including qualified immunity and failure to state a claim, and filed a letter brief opposing the preliminary injunction. The district court ordered defendants to respond further to the injunction motion and to address the non-frivolous issue of associational rights identified in this court's August 1997 order by stating why the Center would interfere with a penological objective.

Defendants responded by opposing the motion for a preliminary injunction and at the same time filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ. P., supported solely by an affidavit from Miller. Miller's affidavit asserted a single reason for denying the application to form the Center: it "conflicted with an already existing group and would thus result in duplication of services." Nicholas cross-moved for summary judgment and appointment of counsel. Thereafter, the district court again ordered defendants to respond to the substantive issue raised by Nicholas's complaint and warned that "[f]ailing such writing, the preliminary injunction will be granted."

Defendants responded with an affidavit from George Duncan, the "Assistant Commissioner for Facility Operations (*i.e.,* security) at the New York State Department of Correctional Services," who had no role in the denial of Nicholas's application in 1995. Duncan asserted an additional reason for denying Nicholas permission to form the Center: in his opinion, the Center would "undermine the safety and security" of the facility; it would "foster, and perhaps even instigate, adversarial conflicts" within the facility, and "incite collective subversive activities"; it "would be worse than a 'gang,'" and would "trigger serious conflict" in the facility, because the "subservience" it would generate "inevitably leads to extortion and violence."

Based on Duncan's affidavit, the district court granted defendants' motion for summary judgment and denied Nicholas's motions as moot. Judgment was entered on July 10, 1998, and this appeal followed.

## DISCUSSION

We review orders granting summary judgment *de novo,* "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 764 (2d Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment shall be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Because genuine issues of material fact remain in this case, summary

judgment was improperly granted. However, appellees are entitled to qualified immunity and may not, therefore, be sued for money damages.

Nicholas's remaining claim in this case is for infringement of his First Amendment associational rights. In *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Supreme Court held that associational rights in a prison setting "may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise, possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment." *Id.* at 132, 97 S.Ct. 2532. Applying this test, the Court upheld prison regulations prohibiting inmate-to-inmate solicitation for union membership and group meetings. *See id.* at 129, 97 S.Ct. 2532. The Court reached this conclusion because state correctional officials "uniformly testified" that the prisoners' labor union was "fraught with potential dangers." *Id.* at 126–27, 97 S.Ct. 2532.

■ A decade later, in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Court refined the standard of review for all prison regulations that impinge on inmates' constitutional rights: a prison regulation is "valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. 2254. The *Turner* Court identified the methodology to be followed in determining the reasonableness of such regulations. First, there must be a valid and rational connection between the regulation and the governmental interest put forward to justify it, and the governmental objective must be legitimate and neutral. The court must then consider whether there are alternative means of exercising the proscribed right, the impact that accommodating the right will have on other inmates, on prison

guards, and on the allocation of prison resources generally, and the availability of ready alternatives to the regulation. *See id.* at 89–91, 107 S.Ct. 2254; *see also Thornburgh v. Abbott*, 490 U.S. 401, 414–18, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (reiterating *Turner* factors).

In *Allen v. Coughlin*, 64 F.3d 77 (2d Cir.1995), applying the *Turner* methodology, we reviewed a prison regulation that permitted newspaper clippings that were not sent directly by the publisher to be removed from personal inmate mail as suspected contraband. *See id.* at 78, 107 S.Ct. 2254. Prison officials submitted affidavits to support their claim that prison security justified removal of newspaper clippings, but those affidavits cited "only one concrete example of a dangerous clipping." *Id.* at 80, 107 S.Ct. 2254. We held that "[c]onclusory assertions in affidavits are generally insufficient to resolve factual disputes that would otherwise preclude summary judgment" and noted that "the record does not establish as a matter of law that [alternative means for inmates to receive newspaper articles] are effective." *Id.* As a result, we held that "[g]iving the full measure of deference to the judgment of prison authorities, the validity of the [regulation] is not established as a matter of law on this record," *id.* at 81, 107 S.Ct. 2254 (internal citation omitted), and reversed the district court's summary judgment against the plaintiff, *see id.*

■ As in *Allen*, summary judgment was improper in this case. The district court did not acknowledge the applicability of *Turner*, much less address each *Turner* factor. Moreover, Nicholas has asserted credible arguments as to why his proposed Center survives a *Turner* analysis. Nicholas has questioned the validity of the prison's asserted interest in preventing duplication of services because appellees have never identified the inmate group providing the same service. He has also challenged Duncan's stated security concerns as unrelated to the denial of his application. The district court should have con-

sidered these arguments, as well as the question of whether some of the proposed Center's functions but not others would survive *Turner* analysis. In sum, the evidentiary record contains several genuine issues of fact, and we remand the case to the district court for further proceedings.

■ Although defendants-appellees did not address the question of qualified immunity in their summary judgment motion, and so the issue was not reached by the district court, they raised the defense in their answer to the amended complaint and briefed the issue on this appeal. Defendants are indeed entitled to qualified immunity, because the First Amendment right of association to form an inmate legal services organization was not clearly established at the time permission to form the Center was denied.

■ Three questions must be answered in determining whether a right was clearly established at the time defendants acted such that defendants would not be entitled to the defense of qualified immunity: "whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his actions were unlawful." *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995). In evaluating a qualified immunity defense, "the inquiry is not whether plaintiff has alleged a violation of an abstract legal standard, but whether under the particular circumstances alleged, defendants could have reasonably believed that they did not violate plaintiff's constitutional rights." *Gittens v. LeFevre,* 891 F.2d 38, 42 (2d Cir.1989).

In June and July of 1995, when appellees allegedly violated Nicholas's constitutional rights, it was clearly established under Supreme Court and Second Circuit precedent that a prison inmate retains First Amendment speech rights that are "not inconsistent with his status as a pris-

oner or with the legitimate penological objectives of the corrections system." *Giano v. Senkowski,* 54 F.3d 1050, 1053 (2d Cir. 1995); *accord Allen,* 64 F.3d at 79. However, no Supreme Court or Second Circuit case had applied that principle to the formation of an inmate legal services organization to hold that the denial of permission to form such an organization violated the First Amendment.

■ Without Second Circuit or Supreme Court authority defining with reasonable specificity Nicholas's right to form an inmate legal services organization, appellees are entitled to qualified immunity. However, since qualified immunity only shields appellees from monetary damages, Nicholas's claims for equitable relief may proceed. *See, e.g., Rodriguez v. City of New York,* 72 F.3d 1051, 1065–66 (2d Cir. 1995).

To the extent that Nicholas asserts a right to provide legal assistance to other inmates, we note that such claims are usually analyzed under the constitutional rubric of the right of access to the courts. *See generally Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The considerable body of caselaw that has provided definition to that right is not directly implicated in this case, as we earlier dismissed Nicholas's right of access claim as frivolous. We express no view as to the extent, if any, that a First Amendment associational right could protect the right to associate for the purpose of discussing law-related issues short of practicing law, which in New York, of course, is prohibited without admission to the bar. *See* N.Y. Jud. Law § 478. Nor do we, at this early stage, intimate whether the reasons advanced by the state in justification for the prohibition of such associational activity will or will not turn out to be well-founded.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is vacated and the case is remanded for further proceedings. The district court is also instructed to rule upon Nicholas's motions for injunctive relief and appointment of counsel.