Patricia Ryan BERLICKIJ, Plaintiff,

v.

THE TOWN OF CASTLETON, Patrick Eagan, Charles Brown, Scott Lobdell, William Doran, Elizabeth Shepard, William Gilbert, Holly Hitchcock, Susan Steen, and Robert Marcille, Defendants.

No. 2:00–CV–465.

United States District Court, D. Vermont.

Feb. 24, 2003.

James Allan Dumont, Dumont & Lee, P.C., Middlebury, VT, for Plaintiff.

Joseph Andrews Farnham, McNeil, Leddy & Sheahan, P.C., Burlington, VT, for Defendant.

## OPINION AND ORDER

SESSIONS, Chief Judge.

A former town zoning administrator and assessor has brought suit against her town and members of its Planning Commission and its Selectboard, alleging violations of federal and state constitutions and statutes in connection with the termination of her employment. All Defendants have moved for summary judgment on all counts of the complaint as amended. For the reasons that follow, the motion (Doc. 95) is granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are either undisputed or presented in the light most favorable to the non-moving party. Plaintiff Patricia Ryan Berlickij was appointed to the position of town zoning administrator by the Selectboard of the Town of Castleton, Vermont, upon the recommendation of the

town's Planning Commission. Defendants Patrick Eagan, Charles Brown, Scott Lobdell, William Doran and Elizabeth Shepard were, at the times relevant to this action, members of the Selectboard. Defendants William Gilbert, Holly Hitchcock, Susan Steen and Robert Marcille were, at the times relevant to this action, members of Castleton's Planning Commission.

The zoning administrator is appointed by the Selectboard to a three year term.[1] Berlickij's fourth three year term as zoning administrator commenced March 24, 1997.

In August 1999, Spectrum Youth Services ("Spectrum") communicated with Berlickij about a house it planned to purchase in Castleton for use as a group home for young women with psychiatric disorders that qualify as disabilities under federal and state law. Berlickij stated that in her opinion Spectrum would not be required to obtain a zoning permit. Berlickij claims that many town residents as well as members of the Selectboard were upset that a group home for troubled teenagers would be located in their town. At least one anti-Spectrum meeting was held, and according to a Spectrum representative, a member of the Planning Commission attempted to intimidate the organization into abandoning its plans to purchase the house.

In September 1999 the Town attorney wrote to Spectrum, stating that the zoning administrator had no authority to issue an advisory opinion in the absence of a formal permit application, and that the Town would not provide a specific opinion about the proposed use until Spectrum actually submitted a permit application. At the same time the Town attorney wrote to the Town employees' union, the American Federation of State, County and Municipal Employees ("AFSCME"),[2] advising it that the Selectboard was considering having the town manager assume the zoning administrator's duties. The Defendants concede, for purposes of this motion, that there was a causal connection between Berlickij's actions as zoning administrator with regard to the group home, and the decision not to reappoint her.

The Selectboard and the Planning Commission met in a joint session on March 9, 2000. In executive session during that meeting members of the two bodies discussed appointing the town manager to handle the zoning administrator's duties. The Selectboard minutes for March 9 indicate that the joint executive session ended with no action taken.

On March 14, 2000, the Selectboard chair, Patrick Eagan, forwarded a letter to Berlickij advising her that the Selectboard had made a request to the Planning Commission that it appoint the town manager as zoning administrator at the end of Berlickij's term. The letter informed Berlickij that the Planning Commission would consider the matter at its meeting on March 15, 2000.

The Planning Commission met on March 15. Berlickij was present. The issue of whether to consolidate the zoning administrator position with the town manager position was publicly discussed. Members of the community were permitted to speak to the issue. Berlickij spoke on her own behalf. Eventually, the chair of the Planning Commission, Delbert Beebe, made a motion to reappoint Berlickij to the zoning

1. Under Vermont law, municipalities that have zoning or subdivision regulations must appoint a person to fulfill the responsibilities of the zoning administrator. Vt. Stat. Ann. tit. 24, § 4442(a) (1992). That person may also hold any other office in the municipality. *Id.*

2. At the time, the zoning administrator's position was part of the town's collective bargaining unit.

administrator's position. The motion failed for lack of a second. The Planning Commission then voted to hold a second meeting with the Selectboard to discuss the issue.

On March 22, 2000 the Planning Commission met again. The zoning administrator appointment was again discussed at length, publicly, and with some rancor. Chairman Beebe again moved that the Planning Commission recommend that Berlickij be reappointed, and again the motion failed for lack of a second. Defendant Hitchcock then moved that the Planning Commission recommend that the town manager be appointed to the position of zoning administrator. The motion was seconded and carried, by a vote of three to one, with one abstention.

Prior to a meeting of the Selectboard on March 27, 2000, two handbills were circulated within the town, urging citizen participation on the issue of Berlickij's non-reappointment. At the March 27 meeting, the Selectboard publicly discussed its March 9 request to the Planning Commission that it recommend the appointment of the town manager to the additional position of zoning administrator, and the Planning Commission's subsequent recommendation to the Selectboard that the town manager take on the post. Chairman Eagan stated that the March 14 letter to Berlickij was based on a unanimous decision of the Selectboard.[3] Mins. of Mar. 27, 2000 Mtg. at 8 (Doc. 97, Ex. 11). He stressed that the recommendation was based on the board's desire to reduce the size of the town government. *Id.* at 9. The minutes of the March 27 meeting reflect that there was substantial public displeasure with the proposal to eliminate Berlickij's position.

Berlickij had also served as the town's assessor since 1988. In March 1999 the voters of Castleton approved a ballot item to recommend to the Selectboard the elimination of the position of assessor. More than a year later, on March 17, 2000, Chairman Eagan sent Berlickij a letter advising her that the board intended to consider and act upon the voters' recommendation to eliminate the position of assessor at its March 27, 2000 meeting. It intended to eliminate the position effective March 31, 2000, and to transfer the duties of the assessor to the town listers. Because the issue was not warned, the Selectboard decided to take up the issue at its next meeting, on March 29. At the March 29 meeting, after public discussion, the Selectboard voted to eliminate the assessor's position. Again, the reason given for eliminating the position was to "downsize the government." Mins. of Mar. 29, 2000 Mtg. at 3 (Doc. 97, Ex. 18).

Berlickij filed a grievance concerning Castleton's actions with regard to the zoning administrator and assessor positions by presenting the town manager with an AFSCME Official Grievance Form on April 3, 2000. Castleton and AFSCME agreed to arbitrate the arbitrability of the grievance. On September 23, 2001 the Arbitrator held that the issue of Berlickij's reappointment to the zoning administrator position after the expiration of her statutory three-year term was not arbitrable. Ruling on Mot. to Dismiss at 8 (Doc. 97, Ex. 21). The Arbitrator also held that because the town had a right, under its collective bargaining agreement, to eliminate the position of assessor, he lacked the authority to review the town's decision. *Id.* at 10, 11.[4] The September 23 ruling

---

**3.** The Defendants concede, for purposes of this motion, that a "vote" did take place at the March 9 executive session.

**4.** The Arbitrator's Interim Award stated as follows:

> I find that insofar as the grievance claims that the decision to eliminate the positions

did not dispose of all of the claims asserted by AFSCME, however.

Castleton and AFSCME eventually executed a Stipulation to Dismissal with Prejudice and Final Award, in which AFSCME stated that it did not wish to arbitrate the issues that were not disposed of by the Interim Award, and the parties agreed that the Arbitrator could issue a Final Award dismissing the remaining issues with prejudice. Stipulation at 2–3 (Doc. 97, Ex. 23).

Berlickij filed suit in the Superior Court of Rutland County, Vermont; the Defendants removed the suit to this court on December 14, 2000 on the basis of federal question jurisdiction. 28 U.S.C. § 1441(c). Berlickij's amended complaint contains eight counts: (1) that the Town and the individual defendants violated her First Amendment rights of association, to petition for redress of grievances, and to free speech by holding secret meetings; (2) that the Town and the individual defendants violated these same rights also guaranteed by Article 13 of the Vermont Constitution; [5] (3) that the Town and the individual defendants discharged her in retaliation for her exercise of free speech rights protected by the First Amendment; (4) that the Town and the individual defendants discharged her in retaliation for speech protected by Article 13 of the Ver-

mont Constitution; (5) that the Town and the individual defendants retaliated against her in violation of the Fair Housing Act, 42 U.S.C.A. § 3601 *et seq.*; (6) that the town and the individual defendants retaliated against her in violation of Vermont's Public Accommodations law, Vt. Stat. Ann. tit. 9, §§ 4500–4507 (1993 & Supp.2002); (7) that the town and the individual defendants violated Berlickij's rights under Vermont's Open Meeting law, Vt. Stat. Ann. tit. 1, §§ 310–314 (1995 & Supp.2002), rendering null and void any decision to eliminate her positions or to terminate her employment; and (8) that the town and the individual defendants, in depriving Berlickij of her rights under the Open Meeting law, violated the Vermont Constitution's guarantee of due process contained in Article 10.[6]

### DISCUSSION

#### I. *Summary Judgment Standard*

Summary judgment is warranted only if there is no genuine issue as to any material fact, and the undisputed facts show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material when it affects the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a ver-

---

[sic] of Zoning Administrator violated Section 101, 503 or 505 of the contract, the grievance is not arbitrable. Insofar as the grievance claims that the decision to eliminate the Assessor position violated Section 101, 503 or 505 of the contract, on the stipulated facts, the grievance is without merit.
Ruling on Mot. to Dismiss at 12 (Doc. 97, Ex. 21).

**5.** Article 13 of the Vermont Constitution provides "[t]hat the people have a right to freedom of speech, and of writing and publishing their sentiments, concerning the transactions of government, and therefore the freedom of

the press ought not to be restrained." Vt. Const. ch. I, art. 13. The rights of assembly and petition are contained in Article 20, which provides "[t]hat the people have a right to assemble together to consult for their common good—to instruct their Representatives—and to apply to the Legislature for redress of grievances, by address, petition or remonstrance." *Id.*, art. 20.

**6.** Article 10 provides in pertinent part: "nor can any person be justly deprived of his liberty, except by the laws of the land, or the judgment of his peers." Vt. Const. ch. I, art. 10.

dict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A moving party bears "the initial responsibility of informing the … court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted); *see also FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party is entitled to summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

In deciding a motion for summary judgment, a "court must first resolve all ambiguities and draw all inferences in favor of the non-moving party, and then determine whether a rational jury could find for that party." *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). "Uncertainty as to the true state of any material fact defeats the motion." *Gibson v. Am. Broadcasting Cos.,* 892 F.2d 1128, 1132 (2d Cir. 1989).

## II. *Jurisdictional Issues*

### A. *Standing*

■ Although Defendants argue strenuously to the contrary, it cannot be seriously disputed that Berlickij has standing to bring her suit. In order to pass the constitutional test for standing, a plaintiff must demonstrate (1) "injury in fact"; (2) causation; and (3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Injury-in-fact means "a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" *Vt. Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). Pecuniary or economic injury is generally a legally protected interest. *See Cent. Ariz. Water Conservation Dist. v. United States EPA,* 990 F.2d 1531, 1537 (9th Cir.1993).

In addition to the constitutional requirements, there are prudential principles that will limit the suits that a federal court will entertain: (1) a plaintiff must assert her own legal rights and interests, and cannot rest her claim to relief on the legal rights or interests of third parties; (2) courts will refrain "from adjudicating abstract questions of wide public significance which amount to generalized grievances;" and (3) a plaintiff's complaint must "fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 474–75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).[7]

The Supreme Court in *Lujan* explained that

> [w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred … in order to establish standing depends considerably upon whether the plaintiff is [herself] an object of the action (or foregone action) at issue. If [she] is, there is ordinarily little question that the action or inaction has caused [her] injury, and that a judg-

---

7. Although the Defendants appear to be challenging Berlickij's standing solely on constitutional grounds, not prudential principles, the Court has an independent obligation to examine its own jurisdiction. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

ment preventing or requiring the action will redress it. *Id.*, 504 U.S. at 561–62, 112 S.Ct. 2130. Berlickij has the requisite standing: she allegedly was not reappointed because town officials met secretly and conspired to deny her reappointment in retaliation for her unpopular stance on a zoning issue. This satisfies both the constitutional and the prudential standing requirements.

## B. *Private Right of Action*

The Defendants also suggest that Berlickij has no private right of action against them, without citing any authority for their argument. It is well-established that "[s]ection 1983 provides a private right of action against every person acting under color of state law who imposes or causes to be imposed a deprivation of constitutional rights." *Owen v. City of Independence,* 445 U.S. 622, 665, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Section 1983 also affords a private right of action for violations of federal statutes, *see Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), and the federal Fair Housing Act specifically authorizes a private civil enforcement suit. *See* 42 U.S.C.A. § 3613 (1994). Vermont's Open Meeting law and Public Accommodations law both explicitly provide for private rights of action for violations of the laws' provisions. *See* Vt. Stat. Ann. tit. 1, § 314(b);[8] tit. 9, § 4506(a).[9] The Court therefore assumes that the Defendants meant to challenge Berlickij's ability to pursue a private right of action under Articles 10 and 13 of Chapter I of the Vermont Constitution in her Counts 2, 4 and 8.

Article 13 of Chapter I of the Vermont Constitution is self-executing, and may serve as the basis of a private cause of action. *See Shields v. Gerhart,* 163 Vt. 219, 227, 658 A.2d 924, 930 (1995). Although Article 13 is self-executing, where the legislature has provided a remedy for a violation of state constitutional rights, courts "will ordinarily defer to the statutory remedy and refuse to supplement it" with an implied damages remedy under the state constitution. *Id.,* 163 Vt. at 234–35, 658 A.2d at 934. Berlickij's Count 2 essentially seeks redress for illegal executive sessions of public bodies in her town. The state has provided that any person aggrieved by such activity may apply for declaratory or injunctive relief. Vt. Stat. Ann. tit. 1, § 314(b). Because the state has provided a remedy for the curtailment of free speech by holding improper executive sessions, Berlickij cannot maintain a suit for damages for the same injury under Article 13.

In Count 4 Berlickij again invokes Article 13, claiming that her free speech rights under the Vermont Constitution were violated because the Defendants retaliated against her for her exercise of protected speech.[10] Where the legislature has not created an adequate remedial scheme, "it may be appropriate to imply a

---

8. Section 314(b) provides that "any person aggrieved by a violation of the provisions of this subchapter may apply ... for appropriate injunctive relief or for a declaratory judgment." Vt. Stat. Ann. tit. 1, § 314(b) (1995).

9. Section 4506(a) provides that "[a] person aggrieved by a violation of this chapter may ... bring an action for injunctive relief and compensatory and punitive damages and any other appropriate relief." Vt. Stat. Ann. tit. 9, § 4506(a) (1993). The Defendants have not requested summary judgment on the issue of whether they have violated Vermont's Public Accommodations law. The Court expresses no opinion on whether Berlickij has a viable cause of action under § 4506(a), as opposed to whether the statute affords a private right of action.

10. The Court assumes that Berlickij's reference in ¶ 49 to a violation of 42 U.S.C. § 1983 is a typographical error.

monetary damages remedy to enforce constitutional rights." *Shields*, 163 Vt. at 234, 658 A.2d at 934. In contrast to the statutory remedy afforded for a claim that local officials are meeting and voting in secret, Berlickij's claim that she suffered retaliation as a result of her exercise of free speech as guaranteed by the Vermont Constitution has no specific statutory remedy. Nor would she have been able to pursue her retaliation claims through the arbitration process, because her union declined to pursue such claims. *See* Stipulation at 2 (Doc. 97, Ex. 23). *Cf. Shields*, 163 Vt. at 235, 658 A.2d at 935 (claim of retaliation for exercise of rights under Article 13 could have been adjudicated by administrative agency, citing *In re Morrissey*, 149 Vt. 1, 18, 538 A.2d 678, 689 (1987)).

It is a basic presumption that justiciable constitutional rights will be enforced through the courts. *Davis v. Passman*, 442 U.S. 228, 242, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). A litigant "who allege[s] that [her] own constitutional rights have been violated, and who ... [has] no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of [her] justiciable constitutional rights." *Id.* In the absence of any indication that Berlickij had another forum or remedy for her Article 13 retaliation claim, the Court concludes that she has a cause of action for money damages to enforce her rights under Article 13.

Berlickij's Count 8 asserts that flouting the Open Meeting law constitutes a deprivation of due process as guaranteed by Article 10 of the Vermont Constitution. Article 10 prohibits the deprivation of liberty without due process. *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, ——, 790 A.2d 408, 422 (2001). Because the

state has provided a remedy in the Open Meeting law for violations of the rights to observe and participate in the discussion and decision making of local government, Berlickij cannot maintain a suit for damages for the same injury under Article 10. *See Shields*, 163 Vt. at 234–35, 658 A.2d at 934.

## III. *Immunities*

### A. *Legislative Immunity*

■ The individual Defendants claim that they are immune from suit under the principles of legislative immunity or qualified immunity.[11] Local legislators are entitled to absolute immunity from civil liability under § 1983 for their legislative activities. *Bogan v. Scott–Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). This "immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Id.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)). "[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Id.*, 523 U.S. at 55, 118 S.Ct. 966. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.*, 523 U.S. at 54, 118 S.Ct. 966. Thus "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377, 71 S.Ct. 783.

With regard to the termination of the assessor position, the members of the Selectboard are entitled to legislative immunity, as apparently Berlickij tacitly concedes. The Selectboard is the legislative body of the town. *See* Vt. Stat. Ann. tit. 24, § 2001 (1992). The members of the

---

11. Municipalities do not enjoy either absolute or qualified immunity from suit under § 1983. *Leatherman v. Tarrant County Nar-* *cotics Intelligence & Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Board acted to terminate a position, a measure that their constituents had approved some time before. The vote bore the hallmarks of traditional legislative activity; it "reflected a discretionary, policy-making decision implicating the budgetary priorities" of the town. *Bogan*, 523 U.S. at 55–56, 118 S.Ct. 966.

Concerning the consolidation of the zoning administrator's duties with the duties of the town manager, the Selectboard and Planning Commission members' votes also are shielded by legislative immunity. Any evidence of improper motive or intent of certain members of the Selectboard or the Planning Commission is legally irrelevant; the Planning Commission's recommendation and the Selectboard's vote was to shrink the size of town government by combining the offices of town manager and zoning administrator. *See* Mins. of Mar. 15, 2000 Mtg. at 1–2; Mins. of Mar. 27, 2000 Mtg. at 3 (Doc. 97, Exs.8, 11).

That the Selectboard and Planning Commission members' legitimate legislative activity is immune from suit under § 1983 does not automatically result in the dismissal of all claims against them, however. The individual defendants are entitled to absolute immunity from federal damages liability for that activity. *See Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 406, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (regional officials entitled to absolute immunity from federal damages liability). They are also entitled to absolute immunity from state damages liability. *See Levinsky v. Diamond*, 151 Vt. 178, 185, 559 A.2d 1073, 1078 (1989); *overruled on other grounds, Muzzy v. State*, 155 Vt. 279, 583 A.2d 82 (1990) (absolute immunity shields legislators from liability for acts performed within their authority); *accord Libercent v. Aldrich*, 149 Vt. 76, 81, 539 A.2d 981, 984 (1987). Thus the individual defendants are im-

mune from damages liability on the retaliation counts (Counts 3, 4, 5, and 6).

Berlickij has alleged misconduct on the part of the individual defendants that stands outside the sphere of any legitimate legislative activity, however. She claims in Count 1 that the individual defendants conducted secret meetings that effectively denied her and others the opportunity to speak and to participate in town meetings, and denied her access to a public forum. This claim against the individual defendants is not barred by legislative immunity.

### B. *Qualified Immunity*

The individual defendants have also argued that they are entitled to qualified immunity. Qualified immunity protects officials from liability for federal civil damages if their "conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official[s] to believe that [their] conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir.2003).

In evaluating whether qualified immunity bars a claim, ordinarily a court must "first determine whether the plaintiff[ ] ha[s] alleged a violation of a constitutional right," and second "determine whether the right was clearly established at the time of the alleged violation." *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 359 (2d Cir.2002). Third, even where a right is clearly established, defendants are entitled to qualified immunity if they show that reasonable persons in their positions would not have understood that their conduct violated that right. *Diamondstone v. Macaluso*, 148 F.3d 113, 126 (2d Cir.1998).

In Count 1 (the only damage claim remaining against the individual defendants), by alleging that she and others were de-

nied the opportunity to observe and speak at meetings of the town, Berlickij without question alleged a violation of a constitutional right. Among the long-established rights protected by the First Amendment is "a right to associate for the purpose of engaging in [ ] activities protected by the First Amendment—speech, assembly, [and] petition for the redress of grievances." *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Moreover, Berlickij has a First Amendment right not to be excluded from a forum that is generally held open to the public. *Rowe v. Brown,* 157 Vt. 373, 376, 599 A.2d 333, 335 (1991) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)); *see also Pickering v. Bd. of Educ. of Township High Sch. Dist. 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (public employee does not relinquish citizen's First Amendment rights).

Upon examining the Defendants' Statement of Undisputed Facts and the Plaintiff's Statement of Material Facts in Dispute however, it is clear that the focus of Berlickij's claim is her contention that the Selectboard intentionally held improper executive sessions from which the public was excluded. *See* Pl.'s Statement at ¶¶ A, E, G, H, N, V.[12] There is no evidence that Berlickij was barred or excluded from any public meetings, or that either the Selectboard or the Planning Commission refused to allow her to speak. Berlickij has no First Amendment right to be present at meetings held in executive session, meetings that are not held open to the public. *See Rowe,* 157 Vt. at 377, 599 A.2d at 335. *Cf. Houchins v. KQED, Inc.,* 438 U.S. 1, 9,

98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (First Amendment does not guarantee access to all sources of information within government control).

A right is clearly established if "the right was defined with reasonable specificity," "decisional law ... supports its existence," and "a defendant official would have reasonably understood that his actions were unlawful." *Nicholas v. Miller,* 189 F.3d 191, 195 (2d Cir.1999). The contours of Berlickij's First Amendment right to attend and participate in meetings of a public body were clearly defined by, inter alia, the provisions of Vermont's Open Meeting law. *See* Vt. Stat. Ann. tit. 1, §§ 310–314. Nevertheless, town officials could reasonably have believed that a violation, even an intentional violation, of Vermont's Open Meeting law could not implicate the First Amendment.

In *Rowe v. Brown,* the Vermont Supreme Court reversed in part the dismissal of an action for damages resulting from improper exclusion from meetings of town public bodies. 157 Vt. at 379, 599 A.2d at 337. The case was brought pursuant to § 1983, the Vermont Constitution and its Open Meeting statute. *Id.,* 157 Vt. at 375, 599 A.2d at 334. Rowe's § 1983 claim alleged first amendment violations. *Id.,* 157 Vt. at 376, 599 A.2d at 335. The Court drew a distinction between public meetings and meetings that were improperly designated executive sessions, and ruled that Rowe's § 1983 claim could proceed to the extent that he alleged exclusion from public meetings. *Id.,* 157 Vt. at 377, 599 A.2d at 336. The ruling suggested that a person's remedy for exclusion from an improperly designated executive session lay

---

**12.** To the extent that Berlickij alleges that various members of the Selectboard and Planning Commission met privately from time to time to discuss their public meeting agendas, *see* ¶¶ A, C, D, she fails to state a First Amend-

ment claim. *See X–Men Security, Inc. v. Pataki,* 196 F.3d 56, 70 (2d Cir.1999) (individual has no right under First Amendment to prevent legislators from exercising their rights to express their views).

exclusively with the penalty and enforcement section of the Open Meeting law, § 314. *See id.* Although relief under § 1983 is not "defeated because relief was not first sought under state law which provided a remedy," *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187,* 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), town officials could reasonably have inferred from the *Rowe* decision that meetings in executive session, regardless of their subject matter, would not violate the First Amendment. The individual defendants are therefore entitled to qualified immunity from suit for monetary damages under § 1983. *See Nicholas,* 189 F.3d at 195.

IV. *Claims Remaining Against the Town*

■ Berlickij's suit also seeks to hold the Town liable for state and federal statutory and constitutional violations connected with holding illegal executive sessions and with the termination of her positions. A town "can be held liable [under § 1983] only if the alleged unconstitutional action implements an official 'policy or custom [of the municipality], whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Morris v. Lindau,* 196 F.3d 102, 111 (2d Cir.1999) (quoting *Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Berlickij has alleged that the Town has a long history of holding illegal executive sessions. The Town has not demonstrated the absence of a genuine dispute of material fact on this point; in fact certain of the Defendants' exhibits support Berlickij's argument. *See* Exs. 4, 5, 8, 9, 10, 11, 18 (Doc. 97).

With regard to the elimination of the assessor position and the consolidation of the zoning administrator position, allegedly in retaliation for protected activity, these legislative acts qualify as municipal acts for which the Town may be held liable. *Morris,* 196 F.3d at 112. The Town is therefore not entitled to summary judgment on the ground that Berlickij cannot show an official policy or custom.

A. *Retaliation Claims* [13]

The First Amendment "protects government employees from termination *because of* their speech on matters of public concern." *Bd. of County Comm'rs v. Umbehr,* 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). Thus, even where a government worker has no "right" to continue in her job, the government "may not deny a benefit to a person on a basis that infringes [her] constitutionally protected interests—especially, [her] interest in freedom of speech." *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *see also Umbehr,* 518 U.S. at 674, 116 S.Ct. 2342.

> [A] plaintiff making a First Amendment retaliation claim under § 1983 must initially demonstrate by a preponderance of the evidence that: (1)[her] speech was constitutionally protected, (2)[she] suffered an adverse employment decision, and (3) a causal connection exists between [her] speech and the adverse employment determination against [her], so that it can be said that [her] speech was a motivating factor in the determination.

*Morris,* 196 F.3d at 110 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v.*

---

**13.** For state law claims of retaliation against employees for engaging in protected activities, the Vermont Supreme Court has indicated that it would follow the analytical approach adopted by the United States Supreme Court in retaliation cases implicating rights protected by the United States Constitution. *See In re McCort,* 162 Vt. 481, 490, 650 A.2d 504, 509 (1994); *see also In re Robins,* 169 Vt. 377, 383, 737 A.2d 370, 374 (1999).

*Doyle,* 429 U.S. 274, 283–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Speech pertaining to "any matter of political, social, or other concern to the community" is generally protected by the First Amendment. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The Defendants apparently do not contest that Berlickij's communications in connection with administration of the Town's zoning regulations are protected activity. Nor can it be questioned that Berlickij suffered an adverse employment decision. *See Morris,* 196 F.3d at 110 (adverse employment actions include discharge and refusal to hire).

The Defendants have asserted both that there is no evidence of causation and that any retaliatory motive is irrelevant. Evidence of causation "must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Morris,* 196 F.3d at 110. The evidence may be circumstantial; for instance, proof "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988); *see also Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996).

The Defendants have conceded, for purposes of summary judgment, that the failure to reappoint her to her positions "somehow stemmed from her dispatching her duties lawfully with regard to [Spectrum]." Defs.' Mem. at 5 (Doc. 96). The Court therefore cannot conclude as a matter of law that the adverse employment action would have occurred regardless of Berlickij's protected activities.

**B.** *Fair Housing Act Retaliation Claim*

The Defendants' sole discussion of the merits of Berlickij's Fair Housing Act retaliation claim is that she will "be unable to show that the rights of anyone she was working 'with' or 'for' in the zoning realm had *their* rights infringed upon in any way, so her 'Fair Housing Act' claim is a nonstarter." *Id.* at 18. Defendants appear to have misconstrued the nature of Berlickij's claim. The Fair Housing Act

> protects two distinct groups of individuals. First, it safeguards members of the protected class from coercion, intimidation, threats, or interference in the exercise of enjoyment of their Fair Housing Act rights. Second, it protects third parties, not necessarily members of the protected class, who aid or encourage protected class members in the exercise or enjoyment of their Fair Housing Act rights.

*Frazier v. Rominger,* 27 F.3d 828, 833 (2d Cir.1994). Because Berlickij has not claimed that she is a member of a protected class, she must be able to prove at trial that she was an individual who aided or encouraged members of a protected class in the exercise or enjoyment of their Fair Housing Act rights, and that she, not members of the protected class, suffered coercion, intimidation, threats or interference. *See* 42 U.S.C.A. § 3617 (1994).

The Defendants have not pointed to the absence of factual support for the essential elements of this claim; as movants for summary judgment they bear "the initial responsibility of informing the . . . court of the basis for [their] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [they] believe[ ] demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323,

106 S.Ct. 2548 (internal quotation marks omitted). Accordingly, the Defendants are not entitled to summary judgment on Count 5.

## V. Open Meeting Law

█ Berlickij's claim under Vermont's Open Meeting law avers that not only was her right to attend meetings of the town's public bodies violated, but that the decisions to eliminate her position or to terminate her employment are null and void. She seeks declaratory and injunctive relief that would restore her to her positions and require back pay and benefits.

Section 314(b) of Title 1, Vermont Statutes Annotated, provides that "any person aggrieved by a violation of the provisions of [the Open Meeting law] may apply ... for appropriate injunctive relief or for a declaratory judgment." Vt. Stat. Ann. tit. 1, § 314(b). An action taken in violation of the Open Meeting law is not rendered void, but "any formal action, whether or not discussed or initially voted in an executive session, must be voted in a public session to be effective." *Valley Realty & Dev., Inc. v. Town of Hartford,* 165 Vt. 463, 466–67, 685 A.2d 292, 294–95 (1996).

It is undisputed that, regardless of whether the decisions to consolidate and to eliminate Berlickij's positions were initially voted in an illegal executive session, eventually these actions were discussed and voted on in public sessions. *See* Mins. of Mar. 27 & 29, 2000 Mtgs. (Doc. 97, Exs.11, 18). Although a subsequent public meeting that is perfunctory, summary, or purely ceremonial arguably may not cure an open meeting violation, *see Tolar v. Sch. Bd. of Liberty County,* 398 So.2d 427, 429 (Fla.1981) (*cited in Valley Realty,* 165 Vt. at 467, 685 A.2d at 294), in this case there were four subsequent public meetings at which the issue of consolidating the zoning administrator's position was debated at length, and one public meeting that con-cerned the elimination of the assessor's position. No reasonable juror could find that the public votes failed to ratify any Planning Commission or Selectboard action with regard to these positions.

Moreover, the remedy of reinstatement to the zoning administrator's position would not be available to Berlickij in any event. Berlickij's term of office expired as of March 24, 2000. Granting that a public vote was required to decide whether to reduce the size of town government by consolidating the jobs of zoning administrator and town manager, no public vote was required in order not to reappoint Berlickij to her office. The Defendants are entitled to summary judgment on Count 7 to the extent that it seeks an order compelling reinstatement and back pay.

## VI. Issue and Claim Preclusion

█ Claim preclusion, or res judicata, "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." *Pomfret Farms Ltd. P'ship v. Pomfret Assocs.,* 811 A.2d 655, 659 (Vt.2002) (internal quotation marks omitted). The United States Supreme Court has held that a federal court is not required to give an unreviewed arbitration award preclusive effect: "[A]lthough arbitration is well suited to resolving contractual disputes, ... it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." *McDonald v. City of West Branch,* 466 U.S. 284, 290, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). In particular, where a union has control over the submission of an employee's grievance to arbitration, there may be a substantial difference of opinion poten-

tially amounting to a conflict of interest between the union and the employee over the issues presented. *Id.*, 466 U.S. at 291, 104 S.Ct. 1799. In this case, for example, the union agreed not to pursue arbitration of Berlickij's claim that the town was in violation of the non-discrimination clause of its collective bargaining agreement. *See* Stipulation to Dismissal with Prejudice & Final Award at 2 (Doc. 97, Ex. 23). Accordingly, to the extent that the Defendants are attempting to argue that any of Berlickij's claims are barred because of the Arbitrator's rulings on her grievance, res judicata or claim preclusion is inapplicable.

■ The doctrine of collateral estoppel, or issue preclusion, "bars the relitigation of an issue ... that was actually litigated by the parties and decided in a prior case." *In re Tariff Filing of Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 20, 769 A.2d 668, 673 (2001). "An arbitration award will preclude relitigation of an issue in a subsequent judicial proceeding where the parties and issues in both proceedings are the same, the issues were resolved by a final award on the merits, the arbitration provided a full and fair opportunity to litigate the issues, and it is fair to preclude the subsequent litigation." *Mellin*, 790 A.2d at 416. On the question of issue preclusion, the Defendants have failed to sustain their burden of showing that they are entitled to summary judgment as a matter of law. They have submitted no evidence that the arbitration provided a full and fair opportunity to litigate the issues, nor that it would be fair to preclude this subsequent litigation. Moreover, there is evidence to suggest that some of the issues raised by Berlickij in her grievance were not resolved by a final award on the merits.

Because the Defendants have not demonstrated that issue preclusion is appropriate, and claim preclusion does not apply, summary judgment on preclusion grounds is denied.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Doc. 95) is granted in part and denied in part. All claims for damages are dismissed against the individual defendants. The damage claims against the Town of Castleton in Counts 2 and 8 are dismissed as well. The request for reinstatement and back pay in Count 7 is dismissed. The claims for declaratory and injunctive relief are not dismissed, nor are the claims for damages against the Town contained in Counts 1, 3, 4, 5 and 6.