2011 VT 103

**Craig M. PEASE v. WINDSOR DEVELOPMENT REVIEW BOARD**
**Craig M. Pease v. Town of Windsor**

[35 A.3d 1019]

Nos. 10-286 & 10-287

¶ 1. September 29, 2011. Plaintiff appeals the trial court's summary judgment determination that defendants had fully responded to his Public Records Act (PRA) request and had not violated his constitutional rights. On appeal, plaintiff contends that defendants' responses to his PRA requests were improperly made through counsel and the custodian of records and thus did not comply with the statute. He also contends that the trial court erred in both its conclusion that his free speech claims against defendants based on their filing of a motion for protective order were barred by litigation immunity and its conclusion that the remainder of his alleged free speech violations were cured by subsequent hearings. We affirm.

¶ 2. Plaintiff is a resident of and property owner in the Town of Windsor. His property abuts another lot that is the site of a proposed subdivision development, Morgan Meadows. The Windsor Development Review Board (DRB) approved the subdivision application on April 2, 2009. Plaintiff, through counsel, appealed this decision to the Superior Court, Environmental Division.

¶ 3. In connection with that appeal, plaintiff made written pro se public records requests to the Town's Zoning Administrator, and to the seven individual members of the DRB. One DRB member responded personally to plaintiff's requests by sending plaintiff the records he requested but noting in an attached letter that it was her "practice to regularly delete email due to the volume on [her] computer, and it appear[ed] that" she had "deleted the contents of [her] computer inbox on March 16, 2009." The remaining members responded through the Zoning Administrator.

¶ 4. According to the Zoning Administrator's unrebutted affidavit, he acts as the DRB's clerk, collects all DRB communications, and responds to requests for public records. He also averred that "[i]n the execution of [his] duties as DRB clerk [he] saved all paperwork related to the Morgan Meadows application for site plan approval, including but not limited to the emails that were sent among the various DRB members." In his response to plaintiff's public records requests, the Zoning Administrator sent a letter indicating that some of the records he had requested relating to DRB deliberations were exempt under the Public Records Act but that all nonexempt records would be available by May 7, 2009. According to the unrebutted affidavit, all nonexempt records were in fact available at the Windsor Town Hall on that date, but plaintiff never picked up those records. Plaintiff concedes this fact.

¶ 5. On May 8, 2009, the Town filed a motion for protective order asking the Environmental Division to enjoin plaintiff from requesting additional records or contacting DRB members other than through counsel. Plaintiff's DRB requests had been made pro se, despite the fact that he was represented by counsel in the matter pending before the Environmental Division. The Town argued that his public records requests were actually nothing more than discovery requests in the pending appeal, and therefore, plaintiff's attorney of record should be the one seeking the records.[1] The Environmental Division responded in a brief entry order on May 11, 2009, staying all discovery "being sought through the civil discovery rules based on the pendency of this appeal" until the date of a scheduled telephone conference, May 27, 2009, but held that "[t]o the extent that those requests [we]re sought through Vermont's Public Records laws, the procedure and appeal is found in 1 V.S.A. § 218 and any litigation regarding such requests must be addressed in superior court. See 1 V.S.A. § 319."

¶ 6. On May 12, 2009, shortly after the Town had filed its motion for protective order, plaintiff attended a Town selectboard meeting. The chair of the meeting called on plaintiff who asserted that the engineering firm tasked with evaluating the Morgan Meadows subdivision had a conflict of interest. The Town Manager interrupted plaintiff and announced to all assembled that such comments were inappropriate at a public meeting because of the pending litigation in the Environmental Division. He then

_____

[1] The records requests sent to the individual DRB members were substantially similar, and all ended with plaintiff's statement that he "need[ed] the material requested . . . to prepare and prosecute [his] appeal to [the] Environmental Court of the 2 April 2009 DRB decision with respect to subdivision application 3263-SD, and for other reasons."

directed plaintiff to address his concerns with the appeal to the Town's attorney.

¶ 7. The day of the scheduled telephone conference, May 27, 2009, the Town filed a motion to remand the DRB's April 2, 2009 decision back to the DRB, which the Environmental Division granted on June 4, 2009. In so doing the court noted that the DRB's decision lacked a "statement of the factual bases on which the [DRB] ha[d] made its conclusions and a statement of the conclusions."

¶ 8. Plaintiff subsequently filed the underlying complaints against the Town and the DRB in Windsor Superior Court. Plaintiff's complaint against the Town contained three counts and sought three forms of relief. The first count averred a PRA claim seeking production of the same records sought in his original April 17, 2009 request for records. The second alleged a retaliatory constitutional claim based on the Town's filing of its motion for protective order in the Environmental Division proceeding and sought to enjoin the Town from taking any action to intimidate him from exercising his right to petition the Town for a redress of grievances. In the third count plaintiff claimed that the Town had retaliated against him for exercising his free speech rights when it interrupted him during the selectboard meeting and when it filed the aforementioned motion for protective order. The third count sought an injunction prohibiting further unconstitutional conduct. Neither the second nor the third counts sought any award of monetary damages.

¶ 9. Plaintiff's complaint against the DRB sought an order to compel the production of the same records he had originally requested from the individual DRB members. The complaint alleged inappropriate participation in the DRB process by the Zoning Administrator and argued the DRB had waived the public records exemption under 1 V.S.A. § 317(c)(24) when it essentially released the documents to the Town by allowing the Zoning Administrator and other third parties to participate. Plaintiff also argued that "the DRB violated the Municipal Administrative Procedure Act's (MAPA) prohibition against ex parte communications" when it allowed the Zoning Administrator, a Town employee, to participate in the DRB's deliberative sessions as its clerk.

¶ 10. During discovery, plaintiff issued discovery requests to the Town and the DRB entitled respectively: "Plaintiff's First Set of Discovery Requests for Town of Windsor" and "Plaintiff's First Set of Discovery Requests for Windsor DRB." Within these discovery requests were plaintiff's requests to admit. Defendants failed to respond to these requests. Plaintiff filed a motion for summary judgment and statement of undisputed material facts against the Town and the DRB arguing that as defendants had admitted the facts in his requests to admit by their failure to respond, he was entitled to summary judgment. Defendants filed motions to enlarge time to answer the discovery requests and file their own motions for summary judgment. These motions were discussed at a status conference held April 9, 2010.

¶ 11. With regard to the requests to admit, defendants claimed that they were "not aware of them" and opined that the requests must have been "buried" because they "did not see them." Also at this hearing, defendants gave plaintiff a copy of all remaining public records and represented to the court that all records had been produced. The court explained that plaintiff was entitled to have the representation in writing, and defendants sent two letters stating that all of the information plaintiff sought from both the Town and individual DRB members had already been produced. Plaintiff conceded at trial that it was undisputed that "the records released to [p]laintiff on 21 July 2009 and 9 April 2010 together fully respond to the Public Records Act request that [p]laintiff sent to [the Zoning Admin-

istrator]." The court granted defendants' motions to enlarge time on April 15, 2010.

¶ 12. Defendants subsequently responded to the discovery requests and filed cross-motions for summary judgment. Plaintiff objected to the cross-motions, asserting that the trial court's grant of the motion to enlarge time did not include a grant to file cross-motions. In response, defendants filed two more motions to enlarge, specifically requesting leave to file a cross-motion for summary judgment. The trial court noted that such motions were unnecessary but granted them nevertheless.

¶ 13. Plaintiff filed a second motion to compel discovery, essentially reiterating his arguments that the DRB had failed to respond to his PRA requests because its members had not responded in their individual capacities. Defendants filed an objection to this motion, noting that "[t]he DRB has elected to respond to [p]laintiff's discovery requests through counsel and through [the Zoning Administrator]. The individual members of the DRB do not have, nor did they ever, any documents other than those which have already been produced to [p]laintiff." Defendants contended that "because there [were] not additional documents, [p]laintiff's motion to compel should be denied."

¶ 14. In its order dated June 28, 2010, the trial court denied plaintiff's motion for summary judgment and granted defendants' cross-motions. In so doing, the court concluded that defendants had fully answered plaintiff's PRA requests by their responses through counsel and the DRB's clerk, that both defendants were protected by judicial immunity with respect to the motion for protective order, that the Town did violate plaintiff's free speech rights at the selectboard meeting but that this was adequately cured by future open meetings or an appeal to the Environmental Division, and that plaintiff was not entitled to a remedy for his perceived due process violations — the participation of a Town employee in the DRB's deliberative process on the subdivision application — beyond his right of appeal to the Environmental Division. Plaintiff appeals.

¶ 15. "We review the court's summary judgment decision de novo, applying the same standard as the trial court." *Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, 2011 VT 29, ¶ 11, 190 Vt. 1, 35 A.3d 100. "Summary judgment should be granted only where there are no genuine issues of material fact and any party is entitled to judgment as a matter of law." *Turner v. Roman Catholic Diocese of Burlington, Vermont*, 2009 VT 101, ¶ 23, 186 Vt. 396, 987 A.2d 960; see also V.R.C.P. 56(c).

¶ 16. Plaintiff's first argument is that the trial court erred in granting summary judgment to defendants because he believes the DRB failed to comply with the PRA, 1 V.S.A. §§ 315-320, in two ways: (1) it responded to his records requests through the clerk, rather than through individual members; and (2) the person the DRB claims to be the clerk, the Town Zoning Administrator, does not qualify as such. Plaintiff conceded at trial that he had received all documents requested, and so his argument is one over form, rather than substance.

¶ 17. With regard to the DRB's decision to respond to plaintiff's requests through its clerk, 1 V.S.A. § 318(a) declares: "Upon request, the custodian of a public record shall promptly produce the record for inspection . . . ." Title 1, chapter 5 does not define custodian. However, "[i]n construing a statute, we aim to implement the intent of the Legislature and will 'presume the Legislature intended the plain, ordinary meaning of the statute.'" *In re Ambassador Ins. Co.*, 2008 VT 105, ¶ 18, 184 Vt. 408, 965 A.2d 486 (quoting *Swett v. Haig's, Inc.*, 164 Vt. 1, 5, 663 A.2d 930, 932 (1995)). "[W]ords not defined in statute are to be given their plain and ordinary meaning, which can be taken from a dictionary." *State Agency of Dev. & Cmty.*

*Affairs v. Bisson*, 161 Vt. 8, 11, 632 A.2d 34, 36 (1993).

¶ 18. The trial court looked to the dictionary for a definition of the word "custodian" and found its plain and ordinary meaning to be a "person . . . that has charge or custody of property [or] papers." Black's Law Dictionary 384 (6th ed. 1990). The court compared this with the Zoning Administrator's clerk duties as delineated in his unrebutted affidavit and determined that he came within the definition of "custodian" for the purposes of the statute. Plaintiff contends that it was error for the court to resort to the dictionary definition of the word "custodian" because the PRA "is not to be interpreted with standard methods of statutory construction," but instead "must be 'liberally construed' by courts so as to facilitate disclosure of requested records." While plaintiff is correct that the PRA requires liberal construction to facilitate disclosure, see 1 V.S.A. § 315, plaintiff makes no argument as to how a determination that the Zoning Administrator was the DRB's record custodian in any way hindered disclosure and in fact admits he has received all requested documents. The trial court's use of the dictionary definition of the word "custodian" was proper when the statute offered no guidance to the meaning of the term.

¶ 19. Further, we agree with the trial court's construction of the word "custodian" in the PRA and its conclusion that the Zoning Administrator fit within this definition. Black's Law Dictionary 390 (7th ed. 1999) defines a custodian as: "[a] person or institution that has charge or custody of property, papers, or other valuables." Another court has defined a custodian as one "who ha[s] it within their power to release or communicate public records." *Mintus v. City of West Palm Beach*, 711 So. 2d 1359, 1361 (Fla. Dist. Ct. App. 1998) (per curiam). According to the Zoning Administrator's unrebutted affidavit, he acted as the DRB's clerk,

collected all DRB communications, responded to requests for public records, and had custody of "all paperwork related to the Morgan Meadows application." The trial court's conclusion that the Zoning Administrator was the DRB's custodian within the meaning of the statute was therefore proper.[2]

¶ 20. Plaintiff's next contention — that the DRB members failed to comply with the PRA because they were required to answer his requests personally — has no basis in our law. Title 1, § 318(a) requires that "[u]pon request the custodian" shall provide records for inspection. Plaintiff concedes that the Zoning Administrator provided him with all records he requested from the Town and the individual DRB members. Thus the trial court's conclusion that the DRB had responded to plaintiff's PRA request was proper.

¶ 21. The trial court did not reach plaintiff's next argument, that the DRB had waived the public records exemption under 1 V.S.A. § 317(c)(24) when it engaged in ex parte communications with third parties. However, as plaintiff has conceded that he received all the documents he requested, this point is moot, and we decline to address it.

¶ 22. Plaintiff further argues that the trial court improperly placed the burden

---

[2] Plaintiff contends that if the Zoning Administrator is in fact the custodian, he failed to properly comply with the PRA request because he never sent written certification that no other records exist. Defendants sent two letters stating that all of the information plaintiff sought from both the Town and individual DRB members had already been produced. Further, plaintiff conceded at trial that defendants had fully responded to his PRA requests and has never alleged that defendants are holding records that were not turned over. Thus the trial court was correct in its determination that defendants had complied with the PRA.

of proof on plaintiff to demonstrate that the DRB members were withholding the requested records when it noted that "[p]laintiff d[id] not allege that individual DRB members [we]re holding records that the custodian did not turn over to [p]laintiff."

¶ 23. While it is true that "the burden is on the agency to sustain its action," 1 V.S.A. § 319(a), plaintiff conflates the concepts of proof burdens and the basic pleading requirement that parties allege their claims. See V.R.C.P. 8(a) ("A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). The trial court did not improperly shift the burden of proof to plaintiff; it merely required some claim from plaintiff that the DRB members were withholding documents. Plaintiff never made such a claim — he in fact conceded production — so the court did not err.

¶ 24. Plaintiff also argues that the trial court erred when it allowed defendants to file their motions to enlarge time and cross-motions for summary judgment because neither met the excusable neglect standard of V.R.C.P. 6(b)(2). However, the excusable neglect standard found in Rule 6(b)(2) applies only in instances in which the motion is filed "after the expiration of the specified period." V.R.C.P. 6(b)(2). The court's discovery order mandated all dispositive motions be filed by March 1, 2010. Plaintiff filed his motion for summary judgment on the last day available, March 1, 2010. Rule 56 allows defendants 30 days to respond to this motion, and defendants responded with their motions to enlarge time to file responses on March 18, 2010 — well within the 30-day time frame.

¶ 25. When a party files its response within the appropriate time period, Rule 6(b)(1) controls. Under this rule, "the court for cause shown may at any time in its discretion . . . with or without motion or notice order the period enlarged." V.R.C.P. 6(b)(1). We review trial court decisions on motions to enlarge time for abuse of discretion which "will be found only upon a showing that the court withheld it altogether, or that it exercised it for clearly untenable reasons or to an extent clearly untenable." *Miller v. Ladd*, 140 Vt. 293, 297-98, 437 A.2d 1105, 1108 (1981). This was not the case here. The trial court's decision to grant the motion to enlarge was a proper exercise of its discretion.

¶ 26. Plaintiff further argues that defendants did not file any motion or cross-motion for summary judgment by the March 1, 2010 deadline. However, on April 15, 2010, pursuant to defendants' timely March 18 motions to enlarge time, the trial court extended the time for defendants to respond to plaintiff's motion for summary judgment until May 1, 2010. Defendants then timely filed an objection to plaintiff's motion for summary judgment and a cross-motion for summary judgment on April 30, 2010 — one day before the deadline set by the trial court. On May 20, 2010, defendants filed motions to enlarge time to file cross-motions for summary judgment. The court granted defendants' motions nunc pro tunc to enlarge time to file cross-motions through May 21, 2010, but stated that the motions were unnecessary. Defendants then filed reply motions for summary judgment on May 27, 2010, which included requests that the court enter summary judgment for defendants. Both sets of defendants' motions requested summary judgment in their favor and at least the first set was made timely by the trial court's prior extensions. Therefore, the trial court did not err in granting defendants' cross-motion.[3]

---

[3] Even assuming defendants' cross-motions for summary judgment were untimely under the court's orders, Rule 56 provides that summary judgment may be

¶ 27. Plaintiff next argues that the trial court improperly dismissed his second motion to compel as moot. Plaintiff's second motion to compel essentially reiterated his arguments raised in summary judgment. That is, he contended that the DRB members had failed to respond to his PRA requests because they had not responded in their individual capacities, and that the DRB failed to answer his discovery requests because the answers were signed by the Zoning Administrator. The trial court's conclusion that the Zoning Administrator acted as the custodian of records, whose charge it was to respond to PRA requests for the DRB, disposed of these issues and rendered the motion moot. Thus, this determination was likewise proper.

¶ 28. Plaintiff claims the Town violated his free speech rights and right to petition for grievances under the federal and Vermont constitutions when it filed its motion for protective order in the Environmental Division to prevent him from filing any further pro se discovery. According to plaintiff, this was an "unconstitutional prior restraint on his right to free speech" and an "unconstitutional act of retaliation." The trial court concluded that "[t]his claim ha[d] no merit because [d]efendants are absolutely immune from liability for filing a motion with the court." "Litigation immunity is the common law doctrine that protects parties, witnesses,

entered against the moving party when appropriate. V.R.C.P. 56(c)(3). Plaintiff further argues that the trial court erred when it granted defendants' motions to enlarge time to file their cross-motions for summary judgment because the court had not yet read his memorandum in opposition. Again, defendants' motions were unnecessary, and defendants would have been able to file cross-motions without them. Thus the trial court's failure to read plaintiff's motion in opposition was not in error.

lawyers, and judges as participants in the judicial process from liability for acts and conduct related to a proceeding." *Eckert v. LVNV Funding LLC*, 647 F. Supp. 2d 1096, 1102 (E.D. Mo. 2009). Plaintiff argues this determination was in error because litigation immunity is an affirmative defense which defendants failed to invoke as required by V.R.C.P. 8(c). However, a trial court may in certain instances identify affirmative defenses sua sponte, particularly where its validity is not dependent on issues of fact. See *DaimlerChrysler Servs. N. Am., LLC v. Ouimette*, 2003 VT 47, ¶¶ 4-6, 175 Vt. 316, 830 A.2d 38 (holding that trial court did not abuse its discretion in raising sua sponte the affirmative defense of statute of limitations). Further, plaintiff has not challenged the trial court's order on the grounds that this was an improper use of its discretion, nor has he briefed that argument here. Thus an argument on this ground is waived. *R. Brown & Sons, Inc. v. Int'l Harvester Corp.*, 142 Vt. 140, 142, 453 A.2d 83, 84 (1982) ("Issues not briefed on appeal are deemed waived.").

¶ 29. Plaintiff argues, though, that even if litigation immunity is technically applicable, it is unconstitutional as applied in this instance because the trial court's order, preventing his pro se attempts at discovery while represented by counsel, abridged his right to free speech under the Vermont and federal constitutions. The Vermont Constitution guarantees "[t]hat the people have a right to freedom of speech, and of writing and publishing their sentiments, concerning the transactions of government, and therefore the freedom of the press ought not to be restrained." Vt. Const. ch. I, art. 13. The U.S. Constitution declares: "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. However, nothing in the Environmental Division's order restrained plaintiff's protected speech. The order directed only that plaintiff's use of discovery procedure

conform with the discovery rules, as is required of any litigant. The Environmental Division's order merely stayed plaintiff's pro se "requests for information . . . being sought through the civil discovery rules based on the pendency of this appeal" until the telephone conference, and explained that all "those requests . . . sought through Vermont's Public Records laws . . . must be addressed in superior court." This order did not prevent plaintiff from discussing the case, from sending letters to defendants about his concerns, from publishing his grievances in the newspaper, or any other form of protected speech. It was an exercise of the court's broad discretion regarding discovery matters in active litigation. See *Ley v. Dall*, 150 Vt. 383, 386, 553 A.2d 562, 564 (1988) (trial courts have broad discretion regarding discovery matters). Thus, this order did not constrain plaintiff's protected speech and was proper whether or not litigation immunity applied.[4]

¶ 30. Plaintiff also contends that the Town Manager violated his constitutional right to free speech when he interrupted plaintiff's speech to the selectboard at the May 12, 2009 selectboard meeting. As the trial court noted, plaintiff appears to bring his action directly under the Vermont Constitution. The Vermont Constitution's free speech clause, Vt. Const. ch. I, art. 13, is self-executing and may serve as the basis of a private cause of action.

See *Shields v. Gerhart*, 163 Vt. 219, 227, 658 A.2d 924, 930 (1995). At trial, the Town did not contest that these actions may have violated plaintiff's right to free speech. Instead it argued that as plaintiff was not seeking a claim of monetary damages, but rather only declaratory and injunctive remedies, he was not entitled to relief.

¶ 31. The trial court likened plaintiff's situation to that of the petitioner in *Berlickij v. Town of Castleton*, 248 F. Supp. 2d 335 (D. Vt. 2003). There, the petitioner alleged that the town violated her constitutional rights to petition for redress of grievances and to free speech by holding secret meetings. She also alleged that the town had violated her rights under Vermont's open meeting law when the town selectboard voted in executive session to eliminate petitioner's position. The district court denied plaintiff's requests for declaratory and injunctive relief noting that any violation of the open meetings law in this instance was cured by four subsequent open meetings on the same topic. *Id.* at 347. The trial court here concluded that, similar to the plaintiff in *Berlickij*, whatever harm plaintiff had suffered was cured by a subsequent open meeting on the same topic and that plaintiff had received one when the Environmental Division remanded his claim to the DRB to develop the factual record. We agree that plaintiff's access to successive meetings and his free ability to express his thoughts in this case cures any alleged free speech violations.

¶ 32. Finally plaintiff argues that defendants violated his due process rights by denying him a fair hearing at the DRB hearing on the subdivision application. Plaintiff contends that the Town was an interested party in the application and that because the Zoning Administrator, acting in his capacity as DRB clerk, participated in the deliberative process, defendants violated the Vermont Constitution and MAPA, 24 V.S.A. §§ 1201-1210.

---

[4] Plaintiff argues in passing that a finding of litigation immunity here also violates his constitutional rights under Chapter I, Articles 4, 13, and 20 of the Vermont Constitution; however, he makes no further elaboration on these contentions other than to list the provisions. He provides no substantive analysis or briefing on these claims. "[W]e will not address state constitutional claims where they are insufficiently raised and inadequately briefed." *State v. Brillon*, 2010 VT 25, ¶ 5, 187 Vt. 444, 995 A.2d 557.

¶ 33. By MAPA's terms, "[a]ppeals under this chapter shall be taken in the manner established for the underlying proceedings *to which this chapter is applied." Id.* § 1210 (emphasis added). In construing this section, the trial court concluded that under MAPA the proper venue for plaintiff's appeal was the Environmental Division and that the court's remand of the matter to the DRB cured any perceived violations of plaintiff's right to a fair hearing before the DRB. We agree.

¶ 34. The proceeding to which MAPA applied here was the DRB hearing, which was conducted pursuant to Title 24, chapter 117. According to plaintiff, he raised the issue of conflict of interest with the DRB to no avail. Under 24 V.S.A. § 4471(a), "[a]n interested person who has participated in a municipal regulatory proceeding authorized under [Title 24] may appeal a decision rendered in that proceeding . . . to the environmental division." Such an appeal is the exclusive remedy. *Id.* § 4472(a) ("[T]he exclusive remedy of an interested person with respect to any decision or act taken . . . under this chapter or with respect to any one or more of the provisions of any plan or bylaw shall be the appeal . . . to the environmental division from an adverse decision upon such appeal under section 4471 of this title."). Thus plaintiff's exclusive remedy for his claim of a possible conflict of interest arising under MAPA was to appeal the DRB's decision to the Environmental Division. Plaintiff did appeal this determination to the Environmental Division, and it in turn remanded the complaint to the DRB. In so remanding, plaintiff's alleged due process violations, namely his right to a fair hearing before the DRB, were remedied.

*Affirmed.*