*Wissell v. Fletcher Allen Health Care, Inc.*, No. 232-2-12 Cncv (Grearson, J., May 22, 2014)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Chittenden Unit | Docket No. 232-2-12 Cncv |

**HEATHER WISSELL**, Individually, and as
Administratrix for the Estate of Dylan M. Wissell
      Plaintiff

      v.

**FLETCHER ALLEN HEALTH CARE, INC.**
      Defendant

## DECISION AND ORDER ON DEFENDANT'S MOTION TO QUASH RULE 30(b) DEPOSITION NOTICES

Defendant has filed a motion to quash Plaintiff's Rule 30(b) deposition notices on the following bases: (1) the notices are untimely; (2) they seek information that would not tend to lead to the discovery of relevant evidence; and (3) to the extent they do seek information that would lead to relevant evidence, such information has already been supplied to Plaintiff. For the reasons stated below, Defendant's motion to quash is granted as to one deposition notice (seeking FAHC's position and polices on informed consent), and denied as to all others.

With respect to discovery procedure, Rule 29 provides as follows:

> Unless a Superior Judge orders otherwise, the parties may by written stipulation (1) provide that depositions may be taken before any person, at any time or place, upon any notice, and in any manner and when so taken may be used like other depositions, and (2) modify the procedures provided by these rules for other methods of discovery.

V.R.C.P. 29. Rule 30 contains the general requirements for depositions upon oral examination. "After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination." V.R.C.P. 30(a). "A party desiring to take the deposition of any person upon oral examination shall give notice in writing to every other party to the action at least ten days before the time of taking the deposition." V.R.C.P. 30(b)(1). The deposition notice must "state the time and place for taking the deposition and the name and address of each person to be examined, if known, and, if the name is not known, a general description sufficient to identify the person or the particular class or group to which the person belongs." *Id.*

V.R.C.P. 30(b)(6) allows for a party to take a deposition of an entity, by deposing individuals who are designated, by the entity, to speak on behalf of said entity. Specifically, V.R.C.P. 30(b)(6) states that

[a] party may in the party's notice name as the deponent a public or private corporation or a partnership or association or governmental agency and designate with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The persons so designated shall testify as to matters known or reasonably available to the organization. This paragraph (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

V.R.C.P. 30(b)(6). "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." V.R.C.P. 26(b)(1). That the information sought will be inadmissible at trial is not a ground for objection, as long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Trial courts have "broad discretion regarding discovery matters in active litigation." *Pease v. Windsor Development Review Bd.*, 2011 VT 103, ¶ 29, 190 Vt. 639 (2011), *see also Ley v. Dall*, 150 Vt. 383, 386 (1988) (quoting *Borden Co. v. Sylk,* 410 F.2d 843, 845 (3d Cir. 1969)) ("'It is a well-established principle that the scope and conduct of discovery are within the sound discretion of the trial court.'").

*Relevance/Duplicative Nature of Information Sought in Deposition Notices*

Defendant has moved to quash six deposition notices. The Court considers each deposition notice in turn. The first three notices seek the following information from FAHC, while the other three seek information from specific employees of FAHC.

(1) <u>FAHC statistics for the Cardiothoracic Department on issues involving mortality rates and complication rates for all valvular surgeries conducted from 2005-2010</u>

Plaintiff claims that these statistics are relevant to the issue of whether Dr. Schmoker disclosed accurate risk levels for Dylan regarding the Ross Procedure and the other valve procedures that were contemplated. The Court agrees. Lack of informed consent is defined as, in pertinent part, "[t]he failure of the person providing the professional treatment or diagnosis to disclose to the patient *such alternatives thereto and the reasonably foreseeable risks and benefits involved.*" 12 V.S.A. § 1909(a)(1) (emphasis added). One of Plaintiff's claims is, essentially, that Dr. Schmoker violated § 1909(a)(1) by misrepresenting the difference between the risk level of the Ross Procedure and the risk level of the alternatives. The risk levels of the alternatives to the Ross Procedure that were contemplated for Dylan are clearly "relevant to the subject matter involved in the pending action," or are reasonably calculated to lead to admissible evidence. V.R.C.P. 26(b)(1). The mortality and complication rates for these procedures at FAHC could reasonably have been relied upon by Dr. Schmoker in determining the risk for Dylan in undergoing the Ross Procedure as opposed to the alternatives, and could shed some light on what a "reasonable medical practitioner under similar circumstances would have disclosed." 12 V.S.A. § 1909(a)(1). If the information produced turns out to be of limited relevance, Defendant is

entitled to argue for its exclusion at trial, or argue for its limited weight to the jury. Therefore, Defendant's motion to quash is **denied** as to the FAHC statistics. The statistics, however, shall be limited to February 2005 through February 2010, and only for the following operations: (1) mechanical valves; (2) bioprosthetic valves; (3) valve sparing root replacement; and (4) pulmonary autograph (Ross Procedure).

(2) FAHC's position and policies on what information needs to be provided to patients in order to properly obtain informed consent of patients;

Any response to this request would likely be duplicative and irrelevant. There is no reason to believe that FAHC's "belief" or "position" on informed consent would be any different than its policy, which has already been provided to Plaintiff. Furthermore, FAHC's belief is irrelevant because, as Defendant points out, a physician's duty to disclose particular information in order to obtain informed consent is provided by statute. *See* 12 V.S.A. § 1909. It is up to a jury to determine, based on the evidence presented at trial, whether the patient was provided sufficient information as required by § 1909(a)(1), and whether the physician provided a reasonable response to a specific question as required by § 1909(d). To any extent the information requested by this particular deposition notice could be relevant to determining whether Dr. Schmoker provided a reasonable response to Plaintiff's question under § 1909(d)— for instance, information on how the policy is interpreted—that information could be obtained from the depositions of Dr. Macauley and Dr. Ittleman, which the Court will allow. *See infra*. Accordingly, Defendant's motion to quash is **granted** as to this deposition notice.

(3) FAHC's position and policies on referring patients to other health care facilities outside Vermont.

An alleged *failure to refer* a patient to another health care facility would be an issue of medical negligence rather than informed consent. There are no pending medical negligence claims in this case. However, the question of whether a physician must *inform* a patient of the *possibility* of undergoing the procedure at other, out-of-state medical facilities could fall within the purview of the informed consent doctrine. The failure to disclose such information is not actionable under 12 V.S.A. § 1909(a)(1), but may be actionable under § 1909(d) if the question posed to the physician sought such information. The Court has denied summary judgment as to Plaintiff's § 1909(d) claim because Plaintiff has demonstrated genuine issues of material fact which allow her to move forward to jury consideration of that claim. Therefore, Plaintiff may seek additional facts which may be relevant to that claim. As stated above, if the information produced turns out to be of limited relevance, Defendant is entitled to argue for its exclusion at trial, or argue for its limited weight to the jury. Accordingly, Defendant's motion to quash is **denied** as to this deposition notice.

(4) Robert C. Macauley, M.D., Medical Director, Clinical Ethics at FAHC

Dr. Macauley apparently participated in the creation of the FAHC informed consent policy, and is listed as the Reviewer for the policy. Plaintiff wishes to ask Dr. Macauley if he believes that an FAHC patient, after inquiry, is entitled to know the experience of a surgeon with a particular procedure, and "whether the only thing that matters is that the surgeon feels

comfortable doing the procedure." Pl.'s Resp. Def.'s Supplemental Mem. Supp. Mot. to Quash Dep. Notices ("PR") 4. Plaintiff also wishes to inquire into whether Dr. Macauley believes that Dr. Schmoker's actions and statements are consistent with FAHC's informed consent policy, FAHC's patient's bill of rights, the State of Vermont's patient bill of rights, and the Vermont informed consent statute. *Id*. 4–5.

Defendant argues that Dr. Macauley is not a cardiothoracic surgeon, does not know what the foreseeable risks of a Ross Procedure might be, and had nothing at all to do with Dylan's care. Defendant admits that Dr. Macauley participated in the creation of the Fletcher Allen policy on informed consent, but that he "has no expertise on which to judge the adequacy of the precise risks pertinent to a particular rare heart surgery." Def.'s Supplemental Mem. Supp. Mot. Quash Deposition Notices ("Def.'s Supplemental Mem.") 2.

The Court believes that testimony of Dr. Macauley could be relevant to Plaintiff's § 1909(d) claim. Although Dr. Macauley is not a cardiothoracic surgeon and does not know the foreseeable risks of a Ross Procedure, he may be able to testify about the interpretation of the informed consent policy as to a physician's obligation to respond to a patient's inquiry. This information could be relevant in considering whether Dr. Schmoker provided a reasonable response to Plaintiff's question. Accordingly, Defendant's motion to quash the deposition notice of Dr. Ittleman is **denied**.

However, the Court reminds Plaintiff not to misrepresent Dr. Schmoker's deposition testimony if using it while deposing Dr. Macauley or any other witness. In the Court's view, Dr. Schmoker's testimony in its full context was fairly clear that he believed he had no *affirmative* duty to provide information on his experience in obtaining the patient's informed consent, but that he would provide such information if requested. Deposition of Joseph Schmoker 51–52 (Ex. 8 to Def.'s Supplemental Mem.). The real issue seems to be whether such information was requested, and if so, whether the response to the request was reasonable.

(5) <u>Frank Ittleman, M.D., Division Chief, Cardiothoracic Surgery at FAHC</u>

Plaintiff contends that Dr. Ittleman, as chair of the cardiothoracic department at FAHC, "will likely possess critical information concerning the obligation of cardiac surgeons to respond to an inquiry from a patient concerning their experience with a particular procedure." PR at 4. Plaintiff also suggests that Dr. Ittleman may be the individual with the most information concerning the mortality rates and complication rates for valvular surgeries from 2005-2010 and is therefore the likely 30(b)(6) candidate, but that FAHC "appears to want to block this inquiry by possibly naming Dr. Schmoker as their 30(b)(6) designee on issues involving informed consent." *Id*.

Defendant contends that Dr. Ittleman does not do the Ross Procedure, and that he had "no involvement in the work-up of the plaintiff for surgery, or in providing the decedent with information on which to make an informed consent." Def.'s Supplemental Mem. 2.

Like Dr. Macauley's testimony, Dr. Ittleman's testimony as to how Fletcher Allen's informed consent policy is interpreted by surgeons within the cardiothoracic department

regarding the obligation to respond could be relevant in considering whether Dr. Schmoker's response to Plaintiff's question was "reasonable" or whether Dr. Schmoker "withh[e]ld any requested information." 12 V.S.A. § 1909(d). As such, it appears "reasonably calculated" to lead to the discovery of relevant, admissible evidence. Accordingly, Defendant's motion to quash the deposition notice of Dr. Ittleman is **<u>denied</u>**.

    (6) <u>Keith Nagle, M.D.</u>

Dr. Nagle's testimony is apparently related to damages and the level of consciousness Dylan sustained after his return to the emergency room up until the time of his death. Defendant appears to concede the relevance of Dr. Nagle's testimony. Therefore, Defendant's motion to quash the deposition of Dr. Nagle is **<u>denied</u>**.

*Timeliness of Deposition Notices*

As to the timeliness of the notices, the Court observes that there have been three separate stipulated discovery schedules in this case:

- The initial discovery schedule, stipulated to by the parties and approved by the Court, provided that the deadline for depositions of all witnesses other than experts "shall be scheduled and taken no later than May 1, 2013." Discovery/Alternative Dispute Resolution Stipulation and Order (dated July 17, 2012).

- The first amended discovery schedule, stipulated to by the parties and approved by the Court, extended this deadline until June 1, 2013. *See* First Amended Discovery/Alternative Dispute Resolution Stipulation and Order (dated Feb. 21, 2013).

- The second amended discovery schedule, again stipulated to by the parties and approved by the Court, extended this deadline until November 1, 2013. *See* Second Amended Discovery/Alternative Dispute Resolution Stipulation and Order (dated Sept. 9, 2013).

Defendant points out that the second amended discovery schedule was approved at a status conference on September 9, 2013, after the deadline for fact witness depositions in the previous discovery schedule (June 1, 2013) had passed. According to Defendant, the first three deposition notices at issue here were dated September 5, 2013, and apparently received by Defendant's counsel on September 9, 2013, after the status conference at which the discovery schedule was amended. The depositions of Drs. Ittleman and Macauley were then noticed on September 20, 2013, and the deposition of Dr. Nagle was noticed on September 23, 2013. Defendant contends that while the second amended discovery schedule "included a new date for the completion of any last minute fact depositions (until November 1), it was not to allow the taking of 5 or 6 new depositions on issues remote from the facts of this case that this small additional window was created." Def.'s Supplemental Mem. 2. Defendant represents that if Plaintiff had requested only one fact witness, such as Dr. Nagle, Defendant would not have filed a motion to quash.

However, Defendant contends that plaintiff "has deliberately disregarded the spirit of the minor extension of the discovery schedule that was necessitated by plaintiff's failure to make her expert available within the time contemplated by the previous discovery schedule," and that therefore the Court should "limit additional deposition discovery to what is absolutely necessary and not previously covered or available to plaintiff if requested in a timely manner." *Id.* at 2–3.

In their respective memos, both Plaintiff's counsel and Defendant's counsel argue back and forth about whether the information requested in the deposition notices was "informally" requested during the summer of 2013, and whether opposing counsel responded to said informal request. The Court will not delve into when and whether counsel phoned or wrote to opposing counsel, what was or was not said or written during those alleged conversations or exchanges, what counsel meant by alleged representations to one another, and whether counsel's office made a "typo" on the discovery schedule stipulation. Nor will the Court attempt to discern the "spirit" of the alleged "minor" extension of the discovery schedule. The requested depositions at issue here, the last one of which was noticed on September 23, 2013, could reasonably have been scheduled and completed by the November 1, 2013 deadline provided in the second amended discovery schedule. Therefore, the Court will **deny** Defendant's motion to quash to the extent it is based on untimeliness.

## ORDER

For the foregoing reasons, Defendant's Motion to Quash Rule 30(b) Deposition Notices is **granted in part** and **denied in part**. The motion is **granted** as to the deposition notice requesting "FAHC's position and policies on what information needs to be provided to patients in order to properly obtain informed consent of patients." The motion is **denied** as to all other deposition notices. The parties may proceed with the depositions that are not quashed, subject to any limitations stated above in the Court's decision. The deadline to schedule and complete those depositions, and only those depositions, shall be extended until **July 31, 2014**.

So Ordered.

Dated at Burlington, Vermont, May 20, 2014.

_____
Brian J. Grearson
Superior Court Judge