VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 23-ENV-00124

| | |
|---|---|
| 53 North Pleasant Street Denial | MERITS DECISON |

In this action, Richard Tinsley appeals a decision of the Town of Middlebury Development Review Board (DRB) affirming the Town of Middlebury Zoning Administrator's (Zoning Administrator) denial of a permit application to convert the second floor of an existing detached garage to a recreation room at 53 North Pleasant Street, Middlebury, Vermont (the Property) for use by residential tenants.

In this matter, Mr. Tinsley is represented by Kevin E. Brown, Esq. The Town of Middlebury (Town) is represented by Benjamin W. Putnam, Esq. Neighboring property owners Peter Foreman-Murry and Katherine Koerber have appeared as interested parties and are represented by John M. Mazzuchi, Esq. Neighboring property owners Kevin and Royce McGrath have also appeared as interested parties and are represented by Alexander J. LaRosa, Esq. Finally, neighboring property owners John and Madeline Tenny have appeared as interested parties and are self-represented in this matter.

**Standard of Review**

In an on-the-record appeal, this Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 179-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). This Court has no authority to consider new evidence. See In re Lawrence Site Plan Approval, No. 166-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 9, 2011) (Durkin,

1

J.).[1] In re Marble Dealership Realty LLC Site Plan Approval, No. 169-12-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Aug. 13, 2014) (Walsh, J.). Further, we have no authority to make our own factual determinations and instead, we review the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." See 24 V.S.A. § 1209(a)—(b).

The Court will affirm factual findings only if they are supported by substantial evidence in the record below. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 76, 186 Vt. 568. When examining whether there is substantial evidence in the record, the Court does not assess the credibility of witness testimony or reweigh conflicting evidence in the record. See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004) (unpublished mem.). Thus, the Court simply looks to whether the record below includes relevant evidence that "a reasonable person could accept . . . as adequate" support for the factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. Of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

When reviewing the underlying legal conclusions, the Court does so without deference, unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7.

Our review is further limited to those issues raised by an appellant in their Statement of Questions. See V.R.E.C.P. 5(f). Thus, we review the DRB's decision on appeal with these legal standards in mind, and within the context of the legal issues preserved by Mr. Tinsley's Statement of Questions.

## Factual Background

Mr. Tinsley owns property having an address of 53 North Pleasant Street, Middlebury, Vermont (previously defined as the Property). The Property is within the Residential 12 (R-12) District. Mr. Tinsley operates the Property as two units of rental housing, which is an

---

[1] For this reason, we decline to consider any supplemental evidence outside of the record presented to the DRB below submitted by the parties in connection with their respective briefing in the form of printed cases or supplemental printed cases, to the extent that any proffered evidence therein is outside of the record before the Court. To the extent that anything within a supplemental printed case or printed case is already within the record, the Court reviews as a part of the official record before the Court.

allowable use in the R-12 District as set forth in the Town of Middlebury Zoning and Subdivision Regulations (the Regulations). In addition to the residential housing, the Property is improved by a two-story garage barn (the Garage). Mr. Tinsley has proposed to convert the second story of the Garage into a recreational room for use of his tenants (the Project). Mr. Tinsley's tenants have, during his ownership, used the Property for large social gatherings and parties which have negatively impacted the surrounding neighborhood.[2]

In connection with the use of the Property, Mr. Tinsley sought and received a permit from the Vermont Division of Fire Safety (DFS) to use the Garage for "business occupancy" of up to 49 occupants. The DFS permitting process contained additional interactions between DFS and Mr. Tinsley regarding the use of the Garage. It is undisputed that the Project before the DRB and this Court on appeal is not for a "business use" in the commercial sense.

In June 2023, Mr. Tinsley submitted to the Town Zoning Administrator an application for the Project as an accessory use. In July 2023, the Zoning Administrator denied the application because the Project was an identified accessory use in the R-12 District and due to the recreational project being inconsistent with the terms of the DFS permit, which was related to "business occupancy." Mr. Tinsley timely appealed that denial to the DRB.

On October 11, 2023, the DRB denied the application on the grounds that the Project was inconsistent with the Regulations' definition of "accessory use or structure." Further, the DRB concluded that review of the DFS permit was an appropriate step to review an application and may or may not bear weight on the substance of an application's compliance with the Regulations. The DRB did not conclude that an inconsistency between the terms of the DFS permit and the scope of the applied for Project presented independent grounds to deny the application. Mr. Tinsley timely appealed the DRB's denial to this Court.

---

[2] The underlying DRB decision does not differentiate use of the Property, generally, including areas outside of the Garage, or use of the Property inside of the Garage by the tenants during these gatherings. The DRB simply found that the use has been of the Property. See DRB Decision at 2 ("A pattern of intensive and sprawling social use of the [P]roperty was established, with impacts on neighboring properties and some instances of public safety concern."). Thus, the Court uses the general term employed by the DRB, noting that there is evidence in the record of these tenant uses have occurred both outside on the Property, generally, and inside the Garage.

**Statement of Questions**

Mr. Tinsley raises six Questions in his Statement of Questions. They ask:

1.  Whether the proposed renovation of the second floor of the garage located at [the Property] for use as recreation . . . room for the property's residential tenants is an incidental and subordinate to the use of the principal residence and therefore qualify as an accessory use or structure.

2.  Whether the [DRB] erred in ruling that the proposed indoor rec[reational] room constitutes "an intensification of social/assembly types uses to goes well beyond typical residential uses and is likely to have an undue adverse impact upon the character of the neighborhood." DRB Decision dated October 11, 2023, Analysis and Conclusions of Law, 1B.

3.  Whether the DRB erred by basing its denial of the proposed indoor rec[reational] room on the status of the presumed users of the rec[reational] room, Middlebury College student tenants, and the past behavior of individuals, rather than upon the functions and characteristics of the rec[reational] room itself.

4.  Whether the DRB erred in basing its denial of the proposed indoor rec[reational] room upon past outdoor gatherings on the property of Middlebury College students such as a celebration of the Women's Lacrosse team's national championship and the Kentucky Derby.

5.  Whether the DRB erred to the extent that it based its decision on the Zoning Administrator's denial of the permit application because the "'rec[reational] room' use request conflicts with State Field Construction Permit dated 11/28/2022." Zoning Administrator's Permit Denial dated July 19, 2023.

6.  Other than with respect to the owners of properties that [a]djoin[] 53 North Pleasant St., whether the DRB erred in designating as "interested persons" those persons that appeared at the hearing of September 11, 2023 and/or raised concerns without receiving sufficient evidence or making the findings necessary to qualify those persons as "interested persons" pursuant to 24 V.S.A. §4465(b)(3) and Middlebury Zoning and Review Regulation §1040III.

Statement of Questions (filed on Nov. 22, 2023).

In its principal brief, Mr. Tinsley noted that Question 6 was not briefed therein because at the time his motion to dismiss the Town was then-pending. Between his

4

principal and reply brief, this Court denied the motion to dismiss and concluded that the Town could be a party to this action. See In re 53 N. Pleasant St. Denial, No. 23-ENV-00124 (Vt. Super. Ct. Envtl. Div. May 2, 2024) (Walsh, J.). Question 6 was then not addressed in Mr. Tinsley's reply brief. The Court understands by this that Question 6 was functionally adjudicated by the Court's May 2, 2024 Entry Order and conclusions therein. Thus, the Court concludes that the only Questions presently pending before the Court are Questions 1 through 5.

## Discussion

The Questions remaining largely present two issues. First, whether the Project qualifies as an accessory structure or use under the Regulations. These issues are addressed in Questions 1 and 2. Second, the Questions generally address the scope of what may be taken into consideration by the DRB when making such a conclusion. These issues are set forth in Questions 3 through 4. Because the latter impacts the former, we address these issues first.[3]

### I. Scope of Appropriate Review

#### a. Questions 3 and 4: Student Rentals

Questions 3 and 4 ask whether the DRB erred in considering the people Mr. Tinsley rents to and their past use of the Property in concluding that the Project did not conform to the Regulations.

The record shows that Mr. Tinsley rents the Property to Middlebury College students. Importantly, however, the DRB decision does not address this fact and contains no factual finding or conclusion of law indicating that the denial was based on the tenants' status as college students.

Implicitly, Mr. Tinsley appears to argue that some prejudice towards student tenants drove the decision to deny his application. There is nothing within the decision that indicates that the tenants' student-status drove the decision and, instead, the record and

---

[3] The McGrath's argue in their brief that Mr. Tinsley failed to adequately brief his Statement of Questions such that the Court must rule in their favor on all issues before the Court. The Court concludes that the issues are adequately briefed relative to the Questions presented and decline to grant the McGrath's requested relief in this regard.

decision indicate that the tenant's history of use of the Property, including the Garage, in a manner that the DRB found to be a significant disruption in the neighborhood that drove the decision.

The DRB's conclusion, and this Court's conclusion that the inquiry was proper, is consistent with the Vermont Supreme Court's holding in In re Sardi. 170 Vt. 623 (2000). In Sardi, the Vermont Supreme Court noted that it would decline to adopt constructions of zoning bylaws that "would require [the Court] to construe a zoning ordinance as permitting regulation of property based solely on the ownership rather than the use of land" because such a construction would be inconsistent with the Legislative delegation of zoning authority to towns. Id. at 624. In so concluding, it specifically noted that that this delegation addressed "only . . . the use of such [regulated] areas" which was consistent with the primary purpose of zoning. Id. (citation omitted). The decision on appeal lacks any basis in Mr. Tinsley's ownership or the students he rents to. Instead, it is wholly based in the use of the Property and how that use is expected to impact the character of the area, a required consideration under the Regulations.

Finally, we strongly disagree with Mr. Tinsley's assertion that an analysis of how his student tenants have recreationally used the Property, to the extent that it considers the student-nature of the tenants, is akin to, or would lead to, disparate treatment based on protected class such as race, gender, sexual orientation, religion, ethnicity, or marital status.[4] How a land owner has used their property recreationally, in the context of a zoning permit application related to that recreational use is, for the reasons set forth below, an appropriate consideration under the Regulations. Such an analysis under the Regulations is significantly different from instances where this Court has declined to adopt arguments that sought to regulate projects serving those in long-stigmatized communities such as individuals who were formerly incarcerated or those seeking medical assistance related to addiction. See In re Twin Pines Housing Trust & Dismas of Vt., No. 95-7-11 Vtec (Vt. Super.

---

[4] In making this argument, Applicant's brief makes comparisons to hypothetical circumstances of overt racism in zoning decisions. In so doing, the brief employs language that it states would be "politically obtuse" to overtly state. The Court requests that all parties in any action before the Court refrain from employing such language in any context and instead use less distracting and potentially offensive means of conveying their arguments.

6

Ct. Envtl. Div. Apr. 26, 2012) (Walsh, J.); In re Howard Ctr. Renovation Permit, No. 12-1-13 Vtec (Vt. Super. Ct. Envtl. Div. Nov. 12, 2013) (Walsh, J.). Again, this is particularly true when the decision on appeal lacks any specific basis in the tenants' status as students as opposed to non-students. Thus, we must answer this aspect of Question 3 in the negative to the extent that it argues that the DRB erred in basing its decision on the fact that Mr. Tinsley's tenants are college students as that is not the basis of the decision on appeal.

The remaining aspects of Question 3 and 4 address whether the DRB can consider Mr. Tinsley's tenants' past use of the Property in determining whether the Project may qualify as an accessory room.[5] Functionally, Mr. Tinsley's argument in this regard is that the DRB could not consider evidence of past use by his tenants to determine whether the Project is an accessory use.[6] The Court concludes that the DRB did not err to the extent that it considered the use of the Property recreationally by the tenants in the period of Mr. Tinsley's ownership.

Pursuant to the Municipal Administrative Procedures Act, which on-the-record towns such as the Town are obligated to follow, the Vermont Rules of Evidence (V.R.E.) applicable in civil cases shall be followed. 24 V.S.A. § 1206(b). The V.R.E. states that "[a]ll relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." V.R.E. 402. The V.R.E. define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401.

The Project is proposed as an accessory use within a preexisting accessory structure. See Letter of K. Brown to D. Wetmore re: Notice of Appeal of Denial of Zoning Permit, July 19, 2013 (dated July 28, 2023). Under the Regulations, an accessory use on a residential

---

[5] Mr. Tinsley's arguments relative to this issue are largely intertwined with his argument as to why the DRB could not consider the student-status of his tenants, which the Court concludes is permissible in this instance. To the extent that the arguments are unique, the Court addresses it separately here.

[6] The Court notes that Mr. Tinsley or his counsel did not object to the significant evidence on this issue presented by either interested parties. Further, evidence of past use was provided in support of the application. This past use was even provided as a basis in part for why the application was sought in the first place, functionally to mitigate outdoor impacts from tenant recreational uses. See Transcript 39:1—6 ("That was an outside gathering, and that was the root of the problem for that day . . . And that's party of the reason why; you know, keep them inside.").

7

property is "a use or structure that is incidental and subordinate to the residential use, and which is of a scale, design and nature that will not have an undue adverse impact on the character of the neighborhood." Regulations, § 320 ("Accessory use or structure").

Thus, the DRB could consider any evidence relevant to whether the Project's proffered use complied with this definition and, most relevant here, would not have an undue adverse impact on the character of the area. The Project before the Court is one for recreational use of the Garage by Mr. Tinsley's tenants. Mr. Tinsley's tenants have been using the Property, including the Garage, recreationally over the course of his ownership, which the DRB concluded resulted in negative impacts to the surrounding area. This is particularly true when Mr. Tinsley had appeared to represent to the DRB that moving the past recreational uses inside the Garage to mitigate impacts to the surrounding area was one of the bases for the application. Transcript 39:5—6 ("And that's part of the reason why; you know, keep them inside.").

There is substantial evidence in the record demonstrating that the Property and Garage have been used for large social gatherings that have, as neighbors have testified to, significantly disrupted the character of the area. The tenant's recent recreational use of the Property indoors or outdoors is relevant to determine whether the Project, the purpose of which is to house the recreational use, does not have an undue adverse impact on character of the area as required by the Regulations § 320.[7] To decline to allow the DRB to consider this evidence and base its conclusion thereon would neglect important context that surrounds an application and which is a necessary part of the character of the area analysis contemplated by the Regulations.

We therefore answer Questions 3 and 4 in the negative.

---

[7] To the extent that Mr. Tinsley argues through Question 4 that any outdoor gatherings are irrelevant because the purpose of the Project is to move the recreational use indoors to mitigate impacts to neighbors, this argument similarly must fail. First, the argument is not substantially briefed nor was this issue objected to before the DRB. See Pease v. Windsor Dev. Review Bd., 2011 VT 103, ¶ 29 n.4. Second, for the above reasons, we conclude that the tenants' recreational uses under Mr. Tinsley's ownership in the context of the Project remain relevant to the DRB's analysis under the Regulations.

### b. Question 5: DFS Permit

Question 5 addresses whether the DRB erred in basing its denial on the substance of the DFS permit. We conclude that it did not.

First, the decision on appeal does not state that it was based on the DFS permit. Instead, the DRB decision states that it did not believe it was in error for the Zoning Administrator to inquire as to an application's state permit status and that "[c]onformance or incongruence between those process may bear on the local decision, and inconsistent application may (or may not) indicate a gap in the review of life safety, public health or nuisance related to a local application." DRB Decision at 3. The DRB found no facts related to the DFS permit beyond noting that it was related to Mr. Tinsley's arguments on appeal. Id. at 1. Thus, it did not base its conclusion on inconsistences with the DFS permit. We therefore answer Question 5 in the negative.[8]

## II. Questions 1 and 2: Compliance with Regulations

Questions 1 and 2 address the substance of the application, it's compliance with the Regulations.

The Regulations define "accessory use or structure" on a residential property as "a use or structure that is incidental and subordinate to the residential use, and which is of a scale, design and nature that will not have an undue adverse impact on the character of the neighborhood." Regulations, § 320 ("Accessory use or structure").

Thus, to be an accessory use or structure, the Project must be both incidental and subordinate to the residential use and not cause an undue adverse impact on the character of the neighborhood. Id.

Mr. Tinsley focuses his briefing on whether the Project is a use that would be incidental and subordinate to the residential use such that it must be approvable as an accessory use. This alone is not dispositive under the Regulations. In fact, the decision was based on the Project's failure to conform with the second mandatory clause in the

---

[8] To the extent, however, that these Questions seek to address whether the DRB is generally able to take consideration of, or testimony on, the permit as it did at the hearing, we conclude that, for the same reasons as set forth with respect to the past use of the Property for tenant recreation, it may. This is particularly true when the DRB's decision on appeal does not conclude that the application was denied due to the DFS permit.

9

Regulations, that the use be "of a scale, design and nature that will not have an undue adverse impact on the character of the area."

To the extent that Mr. Tinsley addresses the second prong of the analysis, he focuses on the word "nature" and such that the DRB erred in concluding that the use did not meet the definition of an accessory use. We disagree.

When interpreting zoning ordinances, we apply the rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. First, the Court will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. (citations omitted). If there is no plain meaning, we will "attempt to discern the intent from other sources without being limited by an isolated sentence." In re Stowe Club Highlands, 164 Vt. 15, ¶ 7, 178 Vt. 29. The Court will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 2, ¶ 8, 189 Vt. 578; see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49, 195 Vt. 586 (1986)) ("Our goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'").

An accessory use or structure must be of a "scale, design, and nature that will not have an undue adverse impact on the character of the neighborhood." Regulations, § 320. This language is unambiguous and clearly states that the proposed use or structure must be of an appropriate "scale, design, and nature." In presenting his interpretation of the word "nature" in this context, Mr. Tinsley argues that the Court must interpret this as being limited to the physical space of the Garage and not the use thereof.

Mr. Tinsley's argument neglects the fact that his permit application is one for an accessory use and change in use of the Garage. Thus, this proffered interpretation would lead to the absurd result of prohibiting the Town from analyzing how an accessory use such as the Project would satisfy the second prong of the Regulations' definition when the Regulations are clear on their face that any accessory structure or use must be of a "scale, design, and nature that will not have an undue adverse impact on the character of the neighborhood." Regulations, § 320; see also Braun v. Bd. Of Dental Exam'rs, 167 Vt. 110,

10

117 (1997) (noting the presumption in interpretation that the legislative body did not "intend an interpretation that would lead to absurd or irrational consequences.").

Thus, the Regulations clearly allow a consideration as to the nature of a use of an accessory structure or use to determine if that structure or use fits within the applicable definition. The Court therefore concludes that the DRB did not err in interpreting Regulations § 360 as including such considerations in denying the appeal.

The DRB heard significant evidence related to the proposed use and the historical use of the Property under Mr. Tinsley's ownership.

The Court finds no reason to disturb the DRB's conclusion that the Project is not an accessory use because it would cause an undue adverse impact on the character of the area. There is substantial evidence in the record to support the DRB's finding that the surrounding area is largely a quiet residential neighborhood. There is substantial evidence in the record to support the DRB's finding that the Property has been used for significant social gatherings that have caused negative impacts to the surrounding area. There is also evidence in the record demonstrating that the use has occurred both inside and out of the Garage by Mr. Tinsley's tenants. The stated purpose of the Project is to allow tenants an indoor space for their recreation. The DRB made a factual determination that the recreational activities on the Property, within the Garage and outside of it, have been a disturbance to the area. The Court will not revisit that evidentiary finding.

Mr. Tinsley has provided no evidence that such a recreational space for such recreational use is similarly found in the area such that the Project would be of a "scale, design, and nature" that would not have an undue adverse impact on the character of the area. As such, the Court concludes that the record evidence supports the DRB's findings. Further, the Court finds no grounds to disturb the DRB's legal conclusion that the Project does not meet the definition of "accessory use or structure" because it would have an undue adverse impact on the character of the neighborhood and contained the proper analysis

11

under the Regulations.  Having reached this conclusion, the Court need not address whether the Project would independently be incidental and subordinate to the residential use.[9]

Thus, we answer Question 2 in the negative and decline to review Question 1 as it was not addressed by the DRB below based on its conclusion that the Project would have an undue adverse impact on the character of the neighborhood and is otherwise irrelevant in light of this conclusion.

## Conclusion

For the foregoing reasons, the Court answers each of Mr. Tinsley's Questions in the negative and **AFFIRMS** the DRB's decision on appeal.

This concludes the matter before the Court.  A Judgment Order accompanies this Decision.

Electronically signed this 28th day of June 2024, pursuant to V.R.E.F. 9(D)

Thomas G. Walsh, Judge
Vermont Superior Court, Environmental Division

---

[9] The Court notes that the DRB did not specifically address the independent merits as to whether the Project would be incidental and subordinate to the Property's residential use because it concluded that it would have an undue adverse impact on the character of the neighborhood.  DRB Decision at 3.